## Wytheville.

### GEORGE J. TWOHY V. FLORENCE M. TWOHY.

#### June 16, 1921.

1. APPEAL AND ERROR—*Weight Attached to Decree of Trial Court in Divorce Suit.*—The conclusions of the trial court in a suit for divorce, based upon the entire body of the testimony, are entitled to great respect, and are to be followed unless they are contrary to the evidence, or without evidence to support them.

2. DIVORCE—*Cruelty—Sufficiency of Evidence—Case at Bar.*—In the instant case the bill for divorce by a wife charged the husband with drunkenness, neglect, brutality, obscene language, vulgar behavior, and cruelty on many occasions. The charges were supported by the deposition of the wife and denied by the answer of the husband. The wife's testimony was corroborated to a certain extent, and from the whole record it appeared that the husband failed in his duty, and his habits of drink and conduct while drunk destroyed his wife's affection and rendered her lot grievous to be borne. There was no question from the evidence that the husband caused the wife much mental anguish during many weary years, by his gross neglect, wanton humiliation, and insulting language.

   *Held:* That the evidence was sufficient to support a decree of divorce *a mensa.*

3. DIVORCE—*Cruelty—Actual Violence.*—Violence and apprehension of bodily hurt, though nearly always appearing in suits for divorce on the ground of cruelty, are not indispensable ingredients of that offense.

4. ALIMONY—*Amount—Case at Bar.*—In the instant case, a suit for divorce on the ground of cruelty, an allowance of $3,600 a year to the wife and $3,600 for the support of three children was held not excessive, the husband having an income of $11,500 in addition to some earning capacity.

5. DIVORCE—*Attorney's Fees—Amount.*—In the instant case the trial court allowed in the first instance merely nominal counsel fees and upon final decree in her favor $2,500 was allowed the wife.

   *Held:* Under the circumstances not excessive.

Appeal from a decree of the Circuit Court of the city of Norfolk.   Decree for complainant.   Defendant appeals.

*Affirmed.*

The opinion states the case.

*Venable, Miller, Pilcher & Parsons,* for the appellee.

*William Leigh Williams* and *J. T. Lawless,* for the appellant.

SAUNDERS, J., delivered the opinion of the court.

This is an appeal on the part of George Twohy from a decree of the Circuit Court of the city of Norfolk, divorcing him *a mensa et thoro,* from his wife, Florence M. Twohy, awarding her alimony and counsel fees and the custody of the three infant children.   This decree also provides that the husband may see the children at any reasonable time and place during the school term, and shall "have the right to have the custody of the children during the vacation period of each year for not longer than six weeks." The permanent alimony of the wife is fixed at $3,600 a year, and an allowance of a like amount is made for the support, maintenance and education of the three infant children of the union.   Counsel fees were fixed at $2,500.   These allowances are large, but the defendant is a man of considerable means, apart from his own earning power.   The final decree dismisses the suit, with a provision for reinstatement for such further orders as may be thereafter deemed necessary. There are other provisions contained in said decree, but they are not needful to be recited.   An appeal from this decree was taken by the defendant.

The bill for the divorce was brought by the wife, and charges the husband with drunkenness, neglect, brutality, obscene language, vulgar behavior and cruelty on many occasions. It is alleged that the husband's misconduct began almost with the bridal trip and continued until some time in June, 1919, when the wife left him, taking the three children with her. Shortly thereafter the proceedings for a divorce were instituted. The bill charges specifically that the plaintiff was in bodily fear of her husband, and that she needed the protection of the court to secure her against his cruelties and threats, and compel him to provide for the maintenance and support of herself and the infant children.

The deposition of the wife supports, in great detail and at considerable length, all the charges of her bill. Practically all of the foregoing charges of gross insult, violence, continued drunkenness, protracted neglect and ill treatment generally, are denied by the husband in his answer. These denials are repeated under oath on the stand. The husband admits that he was not at all times without fault, but these faults and breaches of conjugal duty as he relates them would not be sufficient to support a decree for a divorce. However, there are other witnesses than the husband and wife. The testimony of the latter is to a degree corroborated. While we regard the testimony of the wife as a somewhat highly colored recital of her marital troubles, and in many of its most grievous charges lacking the corroboration required by law, we gather on the whole from the record that the husband failed in his duty, and while he has not been drunk as often and to the degree alleged by the wife, his habits of drink during his marital life, and his conduct while drunk, have been such as to destroy his wife's affection and render her lot grievous to be borne.

This appears to be one of those cases referred to by Judge Staples in *Latham* v. *Latham*, 71 Va. (30 Gratt.)

307, 321, when he says: "I agree that there may be cases where the husband, without violence, actual or threatened, may render the marriage state impossible to be endured. There may be angry words, coarse and abusive language, humiliating insults, annoyances in all the forms that malice can suggest, which may as effectually endanger life or health, as personal violence, and which, therefore, would afford grounds for relief by the court."

There is proof in this record of drunken violence inducing fear on the part of the wife, and causing her to leave home, and of unbecoming language and coarse and vulgar words. Such proof is contained in the testimony of the corroborating witnesses.

The assignments of error on the part of the appellant are:

I. That the evidence does not establish cruelty and entitle the plaintiff to a divorce;

II. That the allowances to the wife for herself and children are excessive;

III. That an excessive amount is allowed for counsel fees.

While, as we have stated, the entirety of the wife's charges is far from being supported, and corroboration is lacking in respect of many specific acts testified to in great detail on her part, yet there is a considerable amount of testimony afforded by witnesses other than the plaintiff and defendant. The record is not all affirmation and denial on their part, and there are some damaging admissions made by the husband. Lizzie Myrick, a sister of the wife, testifies that when the parties were first married the husband would not get home until eight at night, though his office hours ended at three. Her sister asked the witness to stay with her at times on these occasions. When the defendant reached home, he would be "under the influence of whiskey, and cross and crabbed." She describes a scene on the front porch at Stockley Gardens, when defendant

arrived under the influence of drink and finding the children around the corner wanted to give them a whipping. The wife interfered. Thereupon, to use the words of the witness, "She got around them, and instead of giving them the licks he gave them to her across the back and the shoulder. He cursed every member of the family, and said that they could go to hell—that he didn't care a damn about any one of them—her mother, brother, sister, and every member. That was on the front porch."

"Q. Did he ever undertake to lock Mrs. Twohy out of the house when she went to a party?

"A. Yes, sir. They were invited out to play cards. He never would go anywhere with her. She went anyway. He would go from one room to another, just like a madman, until she got back. When she got back the doors were all locked and she was locked out."

On the occasion when Mrs. Twohy left home with the children, the witness was there. After describing the preliminary occurrences, the witness says: "My sister asked him quietly to go out of the room, so that they (*i. e.*, she and the children) could get quiet. He said: 'I don't care a damn about you.' He shook his fist at me, and said: 'Your sister, I don't care a damn about her, and have not cared a damn about her in three years.' He looked like he was wild. Really and truly he scared me." On this occasion witness says the husband was drunk. When he went downstairs, his wife locked the door. Returning he broke in the panel of the door. The wife then left with the children, the latter in their night clothes, and went across the street to a neighbor's home where they spent the night. The husband went elsewhere in an automobile with friends.

The following question was asked and answered:

"Q. You all were afraid to stay in the house with him?

"A. Yes, sir. He was just like a wild man."

A Mrs. Britt testifies that in the winter of 1917-18 Mrs. Twohy came to her house very nervous and excited, and that it was "three quarters of an hour before they could quiet her enough to learn what the trouble was." When she became quiet, she narrated her troubles at home that were the immediate cause of her leaving. Mrs Twohy, testifying in relation to this occurrence, states that she went to Mrs. Britt's because she was afraid to stay at home with Mr. Twohy. The children were away that night, and she describes in detail her husband's conduct preceding her departure.

Mrs. Maria Thom testifies that about nine o'clock on the night that Mrs. Twohy finally left her husband, her doorbell rang, and opening the door she found Mrs. Twohy and the three children, the latter in their night clothes and barefooted. Next day the witness went to Mr. Twohy's and found the panel broken out of the door, and, to use her language, "every piece of looking glass was smashed into a thousand pieces, and bottles scattered around the floor, and confusion generally."

[1-3] There is other testimony confirmatory of the wife, and describing the husband's misconduct. A brother, after giving many details of the husband's drinking and the number of times that he had been sent for "to go to the house for her (*i. e.*, his sister's) protection," states that he had "never seen him (*i. e.*, the husband) affectionate to her (*i. e.*, the wife) in his life." It is unnecessary to cite the evidence further. The conclusions of the trial court, based upon the entire body of the testimony, are entitled to great respect, and are to be followed unless they are contrary to the evidence, or without evidence to support them. There is much evidence in the record establishing the defendant's misconduct and justifying the decree of the court, and the same in our judgment was properly rendered.

The following citation from *Ringgold* v. *Ringgold,* 128 Va. 485, 104 S. E. 836, is in point: "Violence and apprehension of bodily hurt, though nearly always appearing in suits for divorce on the ground of cruelty, are not indispensable ingredients of that offense. The authorities generally, including those in our own State, wisely allow for exceptional cases in which there may be extreme cruelty without the slightest violence. Mental anguish, repeated and unrelenting neglect and humiliation, may be as bad as physical wounds and bruises, and may be visited upon an unoffending spouse in such degree as to amount to cruelty, even in the very strict sense in which that term ought always to be used in the law of divorce."

There is no question from the evidence in this case that the husband caused the wife much mental anguish during many weary years, by his gross neglect, wanton humiliation and insulting language.

[4] With respect to the allowances for the wife and children, they appear to have been based upon the husband's estimated income of $11,500. The defendant's actual income appears to be somewhat greater than the above estimate. Mrs. Twohy is allowed $3,600 a year, and awarded $3,600 a year for the three children—an aggregate of $7,200. These allowances leave the husband, based on the above estimate, an annual income of $4,300, plus the amounts that may be added by his own activities, as it appears that he has had business experience, and for a number of years held a position in a Norfolk bank.

In the matter of permanent alimony, Mr. Minor says (1 Min. Inst. 309) : "Ordinarily, it is said, the wife ought to be allowed for permanent alimony from one third to one-half of the joint income, two-fifths being no uncommon proportion." See also *Bailey* v. *Bailey,* 21 Gratt. (62 Va.) 43 ; *Francis* v. *Francis,* 31 Gratt. (72 Va.) 285, 289 ; *Harris* v. *Harris,* 31 Gratt. (72 Va.) p. 16 *et seq.;* and *Carr* v. *Carr,* 22 Gratt. (62 Va.) 168.

"The amount of the allowance ordinarily varies from one-half the husband's estate to one-third, and even less, although it would seem, where the wife is entitled to alimony and he is possessed of an estate, it would be improper under any circumstances to give her less than what her dower interest therein would have been, for the reason that he should not be allowed to profit by his own wrong." 1 R. C. L., p. 930.

The husband in this case is the delinquent; nevertheless, he will derive from the profits of his estate (which is estimated at something like $300,000) an amount which will exceed one-third of the net income. This will be for his exclusive personal use. To this fixed income he can add any sums proceeding from his own industry. Moreover, if conditions change at any time, and a readjustment of the allowances fixed by the court should appear to be just and proper, such readjustment may be secured upon application to the court. It does not appear that the court erred in respect of the above allowances.

[5] The last assignment of error relates to the allowance for counsel fees. The court appears to have proceeded prudently in respect to the allowance of these fees. In the first instance and in advance of the ascertainment of the merits of the controversy, a very small sum indeed appears to have been allowed in this connection. Too often these initial allowances are excessive and based upon the allegations of the plaintiff's bill rather than upon knowledge of the merits of the issue. Such allowances tend to extravagance of allegation in the complainant's statement reciting her grievances and the husband's alleged misconduct. Many times in the result it is ascertained that the complaining wife is altogether at fault and relief is denied. Under such circumstances, it is inequitable that an unoffending husband should be compelled to contribute material sums to be expended to his harrassment by an errant spouse. The fact

that the husband is made to pay such allowances, whatever the merits of the case, constitutes a strong inducement to the wife to bring a suit, without regard to the real merits, possibly at times with a malicious purpose to harass the husband. At all times such injudicious initial allowances furnish a temptation to the wife to take the chances of a controversy in which the material costs of the litigation will be imposed upon her adversary, whether she wins or loses. The relative condition of the parties to a divorce suit has greatly changed with the passage of years. Formerly the wife was under great disabilities. She was not an independent contracting agent. Upon marriage, her property became, in large measure, the property of the husband. But all of this has been changed by the positive provisions of present day statutes. The wife holds her own property, and is capable of contracting and being contracted with; in a word, she has been relieved from disabilities which were formerly considered in connection with allowing counsel fees when the wife appealed to the courts for relief in respect of the alleged defaults of the husband.

The trial court seems to have had the foregoing considerations in mind in this case, and his initial allowance for counsel fees was merely nominal. In the final decree, after the merits of the controversy had been settled, and the husband ascertained to be in fault, the sum of $2,500 was allowed. This was a liberal allowance under the circumstances, but we cannot say that there is such error in same that we will undertake to reduce the amount thus awarded. This case is a simple one, presents no complications, and requires the exercise of no great skill or industry on the part of counsel bringing the suit. In making allowances for legal services in these cases, the courts should have in mind the amount of the estate, but in far greater degree such allowances should rest upon the difficulties of the litigation and

the demands which it makes upon the time, knowledge, industry and professional skill of counsel. The allowance made by the trial court in the instant case must be considered to provide compensation both for services below, and appearance in this court.

We find no error in the decree complained of, and the same is affirmed.

*Affirmed.*

(Burks, J., was of opinion that the allowances for alimony and counsel fees were excessive.)