# Wytheville

DAVID T. ALLEN v. ADDIE W. FULFORD ALLEN.

June 11, 1936.

Present, Holt, Hudgins, Gregory, Chinn and Eggleston, JJ.

The opinion states the case.

*Q. C. Davis, Jr.,* for the appellant.

*A. A. Bangel,* for the appellee.

HUDGINS, J., delivered the opinion of the court.

By this appeal, David T. Allen, the husband, seeks to reverse a divorce decree *a mensa,* granted his wife Addie W. Allen.

The question presented by the record is one of fact. Inasmuch as the trial court heard the evidence *ore tenus,* its decree has the force and effect of a verdict returned by a jury.

So viewing the evidence, we find that the parties were married on August 5, 1907. To the union four children were born, two of whom are now living—David, twenty-six years of age, and Holder, twenty-four years of age. These boys lived in the home of their parents until November 16, 1934. Until sometime in 1932 the husband and wife lived together in Norfolk and vicinity, apparently happy and contented, with certain exceptions incident to many married couples. In 1932 Mrs. Allen, who was then suffering with one or more diseases peculiar to women, had a nervous collapse. With her husband she sought the aid of several physicians, none of whom was able to effect an immediate cure. Dr. Southgate Leigh, under whose care she had been for some time prior to the institution of this suit, prescribed quiet, relaxation, and nourishing food. He informed the husband, the two sons, and Miss Owen, who was an inmate of the home, that Mrs.

Allen was in a delicate condition, and sought their co-operation in seeing that she secured the things he deemed necessary for her health.

The husband drank some, and David drank more. Each, not infrequently, returned home late at night. These acts of the husband and son, as might be expected, enhanced the nervous condition of the wife. In addition Mr. Allen, after retiring to his wife's bedroom, which they both occupied, nagged, fussed, quarreled with, and cursed her. Sometimes these quarrels were heard by the sons and Miss Owen. The morning following these quarrels Mrs. Allen's weakened physical condition was quite noticeable. Finally Dr. Leigh asked Miss Owen, who worked down town in the day, to assist him in keeping Mrs. Allen quiet, and to stay with her at night.

In September, 1934, Miss Owen married and moved her residence elsewhere. Thereafter Mrs. Minnie Bennett, a friend of the family, became a member of the household, and at Dr. Leigh's request looked after Mrs. Allen at night, as Miss Owen had done, until the husband returned.

The husband worked during the day, and there seems to have been no reason why he should not have extended to his wife the tender care and attention which her weakened condition required. The evidence is that he did not, and without apparent reason he failed to return to his home until late hours of the night. Every member of the household, except the husband, testified that he grew more irritable and quarrelsome with his wife as her weakened condition became worse; that he repeatedly told her he was through with her, and that she would never see another minute's peace; that both sons time and again requested the father to stop fussing with and abusing their mother; and that he ignored all of these suggestions.

Finally on the morning of November 10, 1934, David, from his bedroom, heard his father quarreling with his mother. He requested his father to cease. The father grabbed a poker and started towards David. Holder caught him and took the poker away. Either there, or in

the hall (the evidence is not clear which), the father and David engaged in a scuffle, and in some way Mr. Allen received a black eye. The father called the police, had David arrested and tried for assault and battery. The case was dismissed. A few days later the father notified the sons and Mrs. Bennett that they would have to leave his residence. He said nothing to his wife, and on November 16th she left with her sons. On the stand she stated that because of her weakened condition, and as Mr. Allen wouldn't stay home at night, she was afraid to stay with him in the absence of her sons.

The situation disclosed is distressing. The husband seemingly was unable to realize, or unwilling to acknowledge, that his wife was not in a normal condition, and that she was unable to perform her household and wifely duties, as she had theretofore performed them. This seemed to have irritated him, and instead of comforting and aiding her in complying with the doctor's instructions, he permitted his ill temper to have free rein, and gave vent to his spleen in the form of cursing and abusing her. The wife was in no condition, either physically or mentally, to withstand such ill treatment. Under the circumstances she was justified, as the trial court found, in refusing to remain in the home alone with her husband.

After the separation, neither husband nor wife communicated with the other until this suit was instituted in January, 1935. Mr. Allen requested his pastor, Mr. H. W. Curry, to obtain an interview with Mrs. Allen for him. At this interview, which was held in the presence of the pastor, Mr. Allen requested his wife to return with the boys to his home. He stated; "I understand David is doing all right now, and I want you all to come back." To this she replied; "Daddy, how can you say that? You said time and time again you were through with me and now you want me to come back." Mr. Curry testified that he then saw that Mrs. Allen was getting excited and that the interview was not doing her any good, so he prevailed upon Mr. Allen to leave.

Later Dr. Leigh and Mr. Curry concluded that the relationship between the husband and wife, which had continued for twenty-eight years or more, should not be broken. In their opinion Mrs. Allen's condition would be improved by a complete rest from her usual activities. They had an interview with her in which she agreed that if Mr. Allen would contribute a small sum weekly to her support, she would try for four to six months to build herself up, and at the end of that time, with the boys, she would return to her husband. Mr. Allen was unwilling to pay her anything, and demanded that she return to him immediately and unconditionally. Under these circumstances we doubt whether Mr. Allen's offer of reconciliation was made in good faith. It seems that Mrs. Allen's attempt at reconciliation was sincere.

While the answer of the pastor to the following question may not be relevant evidence in a strict sense, it is an excellent summary of the situation. He was asked, "Do you know of any reason why she should not become reconciled, Reverend?

A. "There is only one reason that I know now, and I am sorry you asked me. My answer to that is because Mr. Allen is basing his defense in this case on the conduct of David, which to my own personal opinion is not right. David stays in my home and I have gotten to know him very intimately, and Mrs. Allen's condition is due solely to her condition of life, her period in life, and probably to certain irritations that naturally occurred in their home in a period of time, and she could not make the adjustment that is necessary, and he blamed the boy for the situation. You have asked for it."

While we have not detailed all of the facts, we think that the above, the vital part of which is contradicted by Mr. Allen, is sufficient for us to sustain the decree of the chancellor.

 The only other question presented is the amount of alimony and a fee for the wife's attorney. Mr. Allen is regularly employed and receives $2,100 per annum. The

chancellor fixed the allowance for alimony at $75 per month. The wife is under the continual care of a physician and at times needs someone to serve her, possibly in the capacity of practical nurse. Under these circumstances the amount is not excessive. The chancellor has the power to make a proper adjustment for the payment of alimony as the changing conditions of the parties and the circumstances may require. The fee allowed for Mrs. Allen's attorney in the trial court seems reasonable and proper. We think that an additional $100 should be allowed Mr. A. A. Bangel, the wife's attorney, for the preparation of the brief and the argument in this court.

With the additional order for the payment of the attorney fee allowed, the decree of the lower court is affirmed.

*Affirmed.*