# Richmond

## THOMAS A. BENNETT v. VIOLA MOTLEY BENNETT.

March 2, 1942.

Record No. 2428.

Present, All the Justices.

The opinion states the case.

*A. H. Light*, for the appellant.

*Carter & Williams, Waldo G. Miles* and *Mary H. Williams*, for the appellee.

EGGLESTON, J., delivered the opinion of the court.

This appeal presents the single question of the sufficiency of the evidence taken by depositions to sustain a decree of divorce granted the wife on the ground of cruelty. Code, section 5104.

The parties were married in 1909 and separated on November 16, 1939. At the date of the institution of the suit the husband was a retired mail carrier. He was fifty-four and she was fifty years of age. During their thirty years of married life they reared three daughters, two of whom were married at the time the evidence was taken.

Apparently the marriage was without unhappy incident until the year 1931, when one of the daughters married a young man preparing for the ministry. Although this marriage was disclosed to Mrs. Bennett, it was kept secret for some months from Mr. Bennett and others. Before Mr.

Bennett was informed of the marriage he became greatly incensed with the apparently improper relations between the young couple. Upon being told of the marriage, and the fact that his wife had known of it in the meantime, his attitude toward Mrs. Bennett and the young couple became very bitter. Apparently Mr. Bennett became obsessed with the idea that his wife, their children, the wife's people, and even their neighbors were gossiping about him and were conspiring to exclude him from their circle. According to his own testimony, he frequently "eavesdropped" on those whom he considered parties to this conspiracy, and, as he said, heard derogatory remarks being made about him to his wife. From this time on, his attitude toward her changed and he no longer treated her with respect and affection. He ceased confiding in her or taking her out socially or going to church with her. He frequently stayed out late at night, leaving her at home in ignorance of his whereabouts, while he sought the companionship of another woman. He quarreled with Mrs. Bennett, with their children, and with their neighbors. On one occasion, in the presence of their youngest daughter, he caught his wife by the wrist and jerked her back and forth with such violence that when he loosened his hold on her she fell to the floor.

In June, 1935, he left his home in Gretna and went to Danville where he rented a room and lived. At the solicitation of the pastor of his church he returned to his family in April, 1937. For a month or so all went well. But one night in the summer of 1937, when his wife and daughter returned from a show they found the screen door locked and he refused admittance to them. Mrs. Bennett was compelled to tear the screen in order to get into the house. A quarrel arose and he slapped the daughter and threatened to strike his wife with a chair. The hostilities thus renewed continued. At another time he slapped his wife and threw a pan of water in her face. He repeatedly treated her with indignity and directed at her profane, insulting and vulgar language in the presence of their daughters and of the neighbors. He ignored and refused to speak to her in the presence of their friends.

These and other incidents of a similar character are related with detail in the testimony of Mrs. Bennett and that of a number of corroborating witnesses. The husband, who was the only witness testifying in his own favor, admitted these incidents although he denied that he was the aggressor in any of them. In our opinion the weight of the evidence amply supports the charges of the wife.

The uncontradicted evidence is, that as a result of this treatment Mrs. Bennett became highly nervous and was on the verge of a collapse. That her condition was known to her husband is shown by his own testimony as well as his statements to the members of the family and to the neighbors. And yet apparently he was entirely devoid of any solicitude for her.

Finally, on November 16, 1939, Mrs. Bennett and her youngest daughter left the home and took up their residence with Mrs. Bennett's people.

Shortly after she had left and before the present suit was instituted, Mr. Bennett wrote his wife a letter in which he apologized for his conduct and offered a reconciliation. Mrs. Bennett refused to accept this letter from the postman. However, the testimony of the husband himself casts suspicion, to say the least, upon the *bona fides* of this offer. While the written offer of reconciliation was unconditional, he testified, in effect, that he was willing to be reconciled provided she would leave the locality where they had lived, where she and her family were widely known and respected, and go to some other place not mentioned or suggested by him.

[■] In our opinion the evidence is sufficient to sustain the decree of the chancellor that the husband was guilty of such cruelty as to justify the wife in leaving her home, and that she was entitled to a divorce.

■ In *Ringgold* v. *Ringgold*, 128 Va. 485, 497, 104 S. E. 836, 12 A. L. R. 1383, we said that "violence and apprehension of bodily hurt, though nearly always appearing in suits for divorce on the ground of cruelty, are not indispensable ingredients of that offense. * * * Mental anguish, repeated and unrelenting neglect and humiliation, may be as bad as

physical wounds and bruises, and may be visited upon an unoffending spouse in such degree as to amount to cruelty even in the very strict sense in which that term ought always to be used in the law of divorce." See also, *Elder* v. *Elder*, 139 Va. 19, 26, 123 S. E. 369; *Twohy* v. *Twohy*, 130 Va. 557, 563, 107 S. E. 642.

The point is made in the brief that some of the acts of cruelty relied on by the wife were condoned by the temporary reconciliation of the parties in 1937. As this court pointed out in *Elder* v. *Elder, supra* (139 Va., at pages 26, 27), cruelty is cumulative, and while "acts of violence committed at an earlier period, and which have not prevented the wife from living with her husband, or going back to him after they have been separated, cannot be made the sole foundation of an action for separation, they form the subject of investigation and proof with a view to determine what is the true issue in the case, namely: whether the wife can with safety to her person and health continue to live with him."

No question is raised as to the reasonableness of the alimony. The decree allows the sum of $35 per month for the support of the wife, and $15 per month for the support and maintenance of the infant daughter. The appellee's brief states that this daughter is now married. If this be true, the husband should be relieved of the payment of the alimony for her support, and the decree appealed from will be so modified.

The decree appealed from will be further modified by allowing counsel for the appellee the additional sum of $100 for the preparation of the brief and the argument of the cause in this court. *Allen* v. *Allen*, 166 Va. 303, 308, 186 S. E. 17, 19.

Subject to these modifications the decree is affirmed with costs.

*Modified and affirmed.*