# Richmond

Bruce T. Forbes, Jr. v. Mary E. Forbes.

May 1, 1944.

Record No. 2779.

Present, Campbell, C. J., and Gregory, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*Tom E. Gilman* and *Jas. G. Martin & Son,* for the appellant.

*Clyde W. Cooper* and *Thomas L. Woodward,* for the appellee.

EGGLESTON, J., delivered the opinion of the court.

This is a suit for divorce. The appellant, Bruce T. Forbes, Jr., filed a bill against his wife, Mary E. Forbes, charging her with having deserted him without cause. He prayed for a divorce *a mensa*, that the decree might be merged later on into a divorce *a vinculo*, and that he be awarded the custody of their infant child.

The wife filed an answer and cross-bill denying the husband's allegations of desertion, alleging that he was guilty of cruelty towards, and constructive desertion of, her, and that this entitled her to a divorce *a mensa* which should, in due time, be merged into an absolute divorce. She prayed for the custody of the child and an allowance for her and its support.

After the trial court had heard the evidence *ore tenus* it entered a decree dismissing the husband's bill, awarding the wife a divorce *a mensa* on the grounds of cruelty and desertion, giving her the custody of the child, and requiring the husband to pay her $25 per week as alimony and support money for the child. From this decree the husband has appealed claiming that the evidence is insufficient to sustain the lower court's findings.

The evidence shows that the couple was married on January 21, 1941. For a few weeks they lived at the home of the husband's mother but later began housekeeping in Portsmouth, where they lived together until their separation on June 12, 1942. In the meantime a son was born to them in September, 1941.

The husband is employed as a painter at the Norfolk Navy Yard and earns approximately $100 per week. While only thirty years old he had been previously married and divorced.

The present marriage was of but a few weeks' duration when the husband began to neglect his wife, who was then with child. While he furnished her with the necessities of life, he gave her little companionship and even less affection. He drank to excess both in the home and in public, was addicted to gambling, frequently stayed out all night, and was absent from the home for days at a time without com-

municating with her or telling her of his whereabouts. One day, in March, 1941, the wife, who did. the cooking, had prepared the evening meal which was customarily served around five o'clock. Without at all notifying her, he failed to come home that day. He returned about three days later and in the meantime had been on a trip to Charleston, South Carolina, as he said, in search of another job. A few weeks later he left home about six p. m. for the avowed purpose of getting a haircut, stating that he would return shortly. His wife heard nothing further from him until after midnight when she was notified that he was in a local hospital severely injured as the result of an automobile accident which occurred while he was carousing with friends. On another occasion he disappeared on Wednesday and his wife and her father searched in vain for him through "all the pool parlors and beer joints" which he frequented. He returned home several days later and gave no excuse for his protracted absence. Again, one afternoon he telephoned her stating that he was at Petersburg and would be home in about two hours. He did not return until four days later. At the trial he testified that he was not on that occasion in Petersburg, but had telephoned her from "the Beach." This situation continued even after the baby was born. He would stay away several days at a time without any notice or reason whatsoever, leaving to his young wife the alternative of remaining alone in the home with the baby or seeking shelter with his mother or her own parents.

On a Wednesday, in June, 1942, immediately preceding the separation, he went to Virginia Beach with friends, promising his wife to return by seven o'clock in the evening. He did not return or even telephone her until the following Friday. After his wife and baby had spent one night alone in their home, they went to the home of her parents where they have since lived. When asked, on cross-examination, whether he thought it was right to have left his wife unprotected in this manner, his callous reply was: "She lived by herself before I married her."

The wife's testimony as to these occurrences is fully corroborated by that of her parents.

She further testified that on one occasion he choked her, on another he struck her, and at times cursed her with vile epithets. Her testimony as to one of the latter incidents is corroborated by that of her brother.

Many of the detailed incidents occurred either while the wife was pregnant or shortly after her baby was born. As the result of her husband's treatment she was nervous, hysterical, and ill. She lost fifteen pounds in weight. Her testimony in this respect is corroborated by that of both of her parents. To use the language of her mother, the young wife's "nerves were all to pieces," and "she would not have been living now if she had stayed there.

Because of this continuous ill-treatment and neglect the wife left the home which her husband had provided for her and with her baby returned to her parents. Not until she had sought the intervention of the Juvenile and Domestic Relations Court did he pretend to make any provision for the support of her and the child.

As might be expected, some of the incidents related by the wife were denied by the husband. But the trial court, who saw and heard the witnesses, has decided these issues of fact in her favor. Its conclusion in this respect has the force and effect of the verdict of a jury and is binding on us. *Allen* v. *Allen*, 166 Va. 303, 304, 186 S. E. 17; *Owen* v. *Owen*, 175 Va. 245, 248, 7 S. E. (2d) 890, 891.

It amply appears from the evidence on behalf of the wife, which the trial court has accepted as true, that she was a faithful wife to the appellant and a good and kind mother to the child.

There is no merit in the contention of the appellant husband that there is not sufficient corroboration of the wife's testimony to meet the requirements of Code, section 5106, as amended by Acts 1920, ch. 334, p. 503, Acts 1928, ch. 126, p. 535, Acts 1938, ch. 138, p. 202. The purpose of this requirement of the statute is to prevent divorces by collusion. But as we pointed out in *Martin* v. *Martin*, 166 Va.

109, 116, 184 S. E. 220, 223: "Corroboration rests in the facts and circumstances of each case. Only those facts necessary to the judgment must be supported. 'Confirmation is not necessary for that removes all doubt, while corroboration only gives more strength than was had before.' *Timberlake's Adm'r v. Pugh*, 158 Va. 397, 163 S. E. 402, 404; *Burton's Ex'r v. Manson*, 142 Va. 500, 129 S. E. 356; *Brown v. Coates*, 165 Va. 254, 182 S. E. 554. It need not rest in the testimony of witnesses but may be furnished by surrounding circumstances adequately established. *Rogers v. Rogers*, 89 N. J. Eq. 1, 104 A. 32." See also, 17 Am. Jur., Divorce and Separation, section 386, pp. 338 *ff*.

Plainly there has been corroboration in all essential matters both by the testimony of the wife's parents as well as by the facts and circumstances of the case.

We agree with the decree of the trial court that the evidence on behalf of the wife is amply sufficient to entitle her to a divorce on the grounds of cruelty and constructive desertion under Code, section 5104. See *Twohy v. Twohy*, 130 Va. 557, 107 S. E. 642; *Bennett v. Bennett*, 179 Va. 239, 18 S. E. (2d) 911.

In accordance with the prayer in the brief of the appellee the decree appealed from will be modified by allowing her the additional sum of $200 for the services of her counsel in the preparation of the brief and the argument of the cause in this court. *Allen v. Allen, supra* (166 Va., at page 308, 186. S. E., at page 19); *Bennett v. Bennett, supra* (179 Va., at page 243, 18 S. E. (2d) at page 913).

Subject to this modification the decree is affirmed with costs, and the cause is remanded to the Circuit Court for such future action with reference to the enlargement of the divorce *a mensa* into a divorce *a vinculo* as the appellee may hereafter be entitled to. *Byerly v. Byerly*, 149 Va. 53, 55, 140 S. E. 121; *Bowman v. Bowman*, 180 Va. 200, 202, 22 S. E. (2d) 29, 30.

*Affirmed.*