# Wytheville

## THELMA G. FUSSELL v. JOSIAH FUSSELL.

June 22, 1944.

Record No. 2795.

Present, All the Justices.

The opinion states the case.

*Robert Hugh Rudd* and *Thomas I. Talley*, for the appellant.

*McC. G. Finnigan*, for the appellee.

GREGORY, J., delivered the opinion of the court.

The appellant, Thelma G. Fussell, filed her bill of complaint in the court below against her husband, Josiah Fussell, praying that she be awarded a divorce *a mensa et thoro*, on the grounds of cruelty and constructive desertion. She also asked for the custody of their two minor children, seven and five years of age, respectively.

The defendant filed his answer denying the charges of cruelty and desertion, and asked for a divorce from the complainant, on the grounds of desertion. He also prayed for the custody of the two children. The court heard the cause upon depositions, refused to grant a divorce to either party, made no award of the custody of the children, and made no provision for their support. Both parties claimed to be aggrieved by the court's decree.

The parties have separated upon three different occasions. The husband claims that these separations were caused by the wife; that she was a poor housekeeper, and that members of her family were partially responsible for the separations.

The complainant says that each separation was caused by the neglect, cruelty, and other misconduct of the defendant. The members of his family have not associated with her for four years. Her version of the first separation in 1937 is that she was pregnant at the time, not well, and that on the advice of her physician, and on account of the neglect of her husband, she left him and went to the home of her mother, where she remained until after the child was born. She instituted a suit for divorce in 1937, but upon the persuasion of her husband, she abandoned it, and again resumed marriage relations with him.

When the child was born in the hospital, the complainant testified that her husband did not show her the proper consideration at the time, that he was indifferent, and manifested no interest in the baby. Her statement in this regard is corroborated by a disinterested witness who was a patient in the hospital, and who observed his treatment of the complainant. We think that the record justifies the conclusion that he was inconsiderate of her at that time, and failed to accord her the treatment that the occasion demanded.

The second separation came in 1938. The parties had had many controversies. The defendant left his wife and children and went to his home, where he remained for several months. He testified that the complainant ran him away from home by threatening him with a butcher knife. She did not deny threatening him with the knife, but she stated that she was forced to do so to protect herself, and to prevent him destroying her radio. While the husband was away, the complainant sent for her sister to come and stay with her and help look after the children. The sister came, and paid board to the complainant while she remained. One night the husband returned to the home and started a fight with his wife and her sister. He removed the fuse plug, which had the effect of throwing the entire house in total darkness. He beat his wife, and beat her sister. There is corroborating testimony of this conduct from witnesses who saw the bruises on the complainant's body the next day.

After this assault, the complainant and the two children left, and again went to the home of her mother. She again instituted a suit for divorce, but upon the insistence of her husband, she dropped it and resumed living with him.

After living together until 1941, the final rupture came. This separation is made the basis of the present suit. The husband continued to neglect his wife, treated her with no consideration, used vile and vulgar language to her, and told her he no longer loved her and wished that she would leave. As one witness testified "it looked like a storm had broken loose every time he came home". These inhumanities caused her to be nervous and upset all the time to such an extent

her health was being impaired. She said she was "worn out physically and mentally, trying to make a go of it with him, with no co-operation whatsoever". Under these circumstances, she and the children finally left him and again went to the home of her mother. The husband flatly denies these things, but upon the whole, there appears to be substantial corroboration of the wife's testimony.

It is our opinion that she has made out a case against her husband of cruelty and constructive desertion, which entitles her to a divorce *a mensa et thoro*. See *Bennett* v. *Bennett*, 179 Va. 239, 18 S. E. (2d) 911; *Forbes* v. *Forbes*, ante, p. 636, 29 S. E. (2d) 829.

We are also of the opinion that the best interests of the children will be better served by awarding their custody to their mother. However, the father should be allowed the privilege of seeing the children at suitable and convenient times. He should be required to make such reasonable payments for their support and to the support of the appellant as may be determined and ordered by the court below. These payments, of course, may be varied in amount from time to time, as the necessities of the wife and children may require, and in accordance with the financial ability of the husband. The decree is therefore reversed, and a decree entered here granting the appellant a divorce *a mensa et thoro* from the appellee, and awarding her the custody of the children. This cause is remanded to the trial court with directions to ascertain and decree the proper amount for the appellee to pay the appellant for her support and the support of the children, and also to provide for the appellee to see the children at convenient times and places.

*Reversed.*