# Richmond

MORRICE LUCILLE WARING MARTIN v. FORD WESLEY MARTIN.

June 12, 1961.

Record No. 5246.

Present, Eggleston, C. J., and Spratley, Buchanan, Snead, I'Anson and Carrico, JJ.

The opinion states the case.

*Lucian B. Cox, Jr.,* for the appellant.

*James M. Pickrell* (*Kellam & Kellam,* on brief), for the appellee.

SPRATLEY, J., delivered the opinion of the court.

On July 1, 1959, Ford W. Martin, hereinafter referred to as appellee, instituted a suit for divorce, by an order of publication, against his wife, Morrice Lucille Waring Martin, the appellant, in the Circuit Court of Norfolk County, Virginia. Receiving notice in Florida of the proceeding, the appellant returned to Virginia. After a consultation with her husband, the suit was, on his motion, dismissed on July 9, 1959, without prejudice. The dismissal was agreed upon because it was feared that the suit would interfere with a vacation trip planned for Olive Marie Birmingham, a child they were seeking to adopt.

Thereafter, the parties were unable to reconcile their marital differences, and on July 15, 1959, appellee instituted, in the same trial court, this proceeding against appellant on the ground that she had willfully deserted him without just cause on February 2, 1959. He prayed that he be granted a divorce *a mensa et thoro*. The appellant filed an answer in which she denied that she was guilty of the desertion charged, and a cross-bill which alleged that appellee was guilty of deserting her, and asked that she be granted a divorce *a mensa*. Later, at appellant's request, her cross-bill was not considered by the court. She stipulated at the trial that she "relied solely on the evidence presented to refute" appellee's prayer for a divorce.

The evidence of the parties was taken by depositions, and on March 7, 1960, a decree was entered dismissing the cross-bill filed by the appellant, and awarding appellee a divorce *a mensa et thoro*. On April 7, 1960, a decree *a vinculo matrimonii* was granted him. Virginia Code, § 20-121, 1960 Replacement Volume.

On April 11, 1960, appellant filed notice of appeal from the *a mensa* decree of March 7, assigning the ground that the evidence was insufficient to justify the granting of a divorce to the appellee. Her sole contention is that his testimony was without the corroboration required by statute. Virginia Code, 1950, § 20-99.

The material evidence may be summarized as follows:

The parties were married in Seattle, Washington, on November 30, 1941. It was his first and her third marriage, her two former marriages having ended in divorce. There were no children born of the marriage; but the parties had instituted legal proceedings to adopt a young girl, Olive Marie Birmingham, who had come into their home in 1957, when ten years of age.

The appellee was honorably discharged from the United States Navy on January 22, 1958. He and his wife had established their

home in Norfolk County, Virginia, in 1949, where they lived until the alleged separation occurred.

The appellee testified that after his discharge from the Navy, his wife repeatedly, almost daily, expressed her desire to move to Florida, where she was born, and where her close relatives resided. He, however, chose to live in Norfolk County, because he thought it better fitted to his personal and business interests.

On the early evening of February 2, 1959, the parties had a dispute over whether Olive Marie, who appellee thought was sick, should be taken to a doctor. The appellee took her to a physician's office, over the protest of appellant that the child did not need any medical service. It appeared that the child did have a high temperature and she was given some medicine by the physician, and told to go home and go to bed. When appellee returned with the child to his home, the dispute between him and his wife continued, and when appellee objected to his wife's implication that he was a liar, the argument became more and more heated. She said she wanted to move to Florida, and if appellee did not move there, she would. He said she further stated: "I am going to Florida and not coming back;" and added that she was "never coming back to this damn State of Virginia."

About 7:30 p. m., appellant left her home, went to a grocery store, returned home between 10:00 and 11:00 p. m., packed her suitcases with her belongings, took certain household goods, some property of the appellee, including his shotgun and personal jewelry, put all of it in appellee's automobile, and left the home immediately, without telling appellee or the child that she was leaving or where she was going. A few days later, she telephoned appellee from Florida, told him where she was, and by mutual agreement, the child, Olive Marie, was sent to her in Florida.

Mrs. Martin remained in Florida until July, 1959, and while there she qualified as a citizen and resident of that State, in order, she said, to get the benefit of the tax exemption laws for a resident. She had her husband send to her the title to his automobile and she transferred the title to her name with the Florida Department of Motor Vehicles. She then obtained a Florida automobile driver's license, had her name placed on the tax books as a citizen of Florida, and sent Olive Marie to a public school there. Appellee forwarded $50.00 per month for the support of the child and other funds from time to time to assist appellant and the child. He frequently wrote friendly

and affectionate letters, usually addressed to both appellant and Olive Marie. In one letter he said: "I cannot understand why you keep wanting to get a divorce so bad. It just don't seem right to me, unless you want to get married again. If you will send me a list of what you want in the house, I will ship it all to you." In another letter, postmarked February 21, 1959, he said, "I cannot understand why you want to divorce me and talk like that. If we can't live together here, maybe we can in heaven." She wrote him some letters which were not produced, and she also talked over the telephone with him several times.

Appellant said that when she telephoned her husband about the first divorce proceeding, he replied: "I cannot live like this. I am going crazy. You won't come back." She said she replied: "You didn't ask me to come. Why don't you come down here?"

Upon returning to Virginia after the first divorce suit was instituted, and after having an argument with appellee, the appellant went to their former home and threw his personal clothing outdoors. Subsequent to the institution of this proceeding, the second suit, without the knowledge or consent of the appellee, she obtained an order for their final adoption of the child. We are told that the final order of adoption was vacated within twenty-one days after its entry.

The appellee further said that his wife called him by telephone on or about July 14, 1959, told him she had obtained the services of an attorney at law; threatened to take legal action against him, and intended to get, if she could, all of his property; and that he then instituted the present proceeding.

Three witnesses, neighbors of the parties, testified they had known appellant and appellee for several years; that appellee's reputation in the community in which he lived for truth and veracity was excellent; that he had always been kind and considerate to his wife; and that they had never observed anything of a violent or abusive nature which would indicate mistreatment of her. One of these witnesses lived across the road from the parties, and the other lived next door.

The appellant testified that appellee had struck her more than once; had often mistreated her; and had beaten her severely in January, 1959. She said that when she returned to Virginia from Florida, he refused to let her come into the home until she threatened him with a civil warrant; that when she left Virginia on February 2, 1959, there was no intent on her part to break off marital relations;

and that she threw his clothing and other property out of the house because they were unclean. She admitted taking appellee's shotgun with her and, by mistake, some of his jewelry. On cross-examination, she said that she considered the relations between her and her husband like those in a "normal family;" that she had told agents of the Department of Welfare, investigating the home as a place for the child, Olive Marie, she had a happy home; and that she so considered the home until the day she left. She declared that her husband told her to leave on February 2, 1959; that he had a violent and uncontrollable temper, and was quite capable of doing her harm when mad; but that she had not been afraid of him, and was not now afraid.

Olive Marie, the only witness called on behalf of appellant, said that she was devoted to both of the parties; that they had small quarrels and arguments; and she "guessed," without being sure, that appellee struck his wife on one occasion when he pushed her down on a bed. She was in another room at that time. She seemed reluctant to testify against either party, and did not clearly recall the circumstances related by them, except that appellant left her home without notice to anyone.

In rebuttal, the appellee declared that he had never, at any time, hit or struck his wife, or threatened to do so on the day she left, or ordered her from the home.

Although the parties had lived at the same place for nine years, there is no evidence from any neighbor or acquaintance of the appellant that she had ever made any complaint of any mistreatment, or that they knew of any mistreatment of her by appellee.

The established rule of this Court is that the decree of a chancellor, based upon depositions, "while * * * not as strong and conclusive as one based on evidence heard *ore tenus*, * * * is presumed to be correct, even though the evidence may be in sharp conflict, and the burden is on him who seeks to overturn it to show that it is manifestly wrong. The decree will not be reversed if it is reasonably supported by substantial, competent, and credible evidence." *Canavos v. Canavos*, 200 Va. 861, 866, 108 S. E. 2d 359; *Stutzman* v. *Nash & Son*, 189 Va. 438, 443, 53 S. E. 2d 45; *Ashby* v. *Dumouchelle*, 185 Va. 724, 731, 40 S. E. 2d 493; 1 Michie Jur., Appeal and Error, § 280, pp. 712, 713.

The principles which govern our determination of the issue whether there was corroboration of appellee's testimony are stated at length in the following cases: *DeMott* v. *DeMott*, 198 Va. 22, 92 S. E. 2d 342; *Graves* v. *Graves*, 193 Va. 659, 70 S. E. 2d 339; *Forbes*

v. *Forbes*, 182 Va. 636, 29 S. E. 2d 829; *Martin* v. *Martin*, 166 Va. 109, 184 S. E. 220.

In *Graves* v. *Graves, supra*, 193 Va., beginning at page 661, the late Mr. Chief Justice Hudgins said:

"The question of corroboration is one of fact, the decision of which in each case depends upon the peculiar facts of that particular case. It is not necessary that the testimony of the complaining spouse be corroborated on every element or essential charge stated as a ground for divorce. The corroborative testimony need not be sufficient, standing alone, to prove the alleged ground for divorce. Any other rule would deprive the testimony of the complaining spouse of any practical effect. The general rule is that where a particular fact or circumstance is vital to complainant's case, some evidence of the same, in addition to the complainant's own testimony, is essential. *The main object of the provision of the statute requiring corroboration is to prevent collusion. Where it is apparent that there is no collusion, the corroboration needs to be only slight. Forbes* v. *Forbes*, 182 Va. 636, 29 S. E. 2d 829; *Bowersox* v. *Bowersox*, 157 Md. 476, 146 A. 266, 65 A. L. R. 165, Annotation 169; 17 Am. Jur., Divorce and Separation, sec. 386, p. 338." (Emphasis added.)

In *Forbes* v. *Forbes, supra*, 182 Va., beginning at page 640, Mr. Justice Eggleston, now Mr. Chief Justice Eggleston, approved the following language of Mr. Justice Holt, later Mr. Chief Justice Holt, in *Martin* v. *Martin, supra*, 166 Va., at page 116:

"Corroboration rests in the facts and circumstances of each case. Only those facts necessary to the judgment must be supported. 'Confirmation is not necessary for that removes all doubt, while corroboration only gives more strength than was had before.' *Timberlake's Adm'r* v. *Pugh*, 158 Va. 397, 163 S. E. 402, 404; *Burton's Ex'r* v. *Manson*, 142 Va. 500, 129 S. E. 356; *Brown* v. *Coates*, 165 Va. 254, 182 S. E. 554. It need not rest in the testimony of witnesses but may be furnished by surrounding circumstances adequately established. *Rogers* v. *Rogers*, 89 N. J. Eq. 1, 104 A. 32."

See also 17 Am. Jur., Divorce and Separation, § 386, pp. 338 ff.

In corroboration of appellee's testimony, the evidence shows that appellant departed from her home on the night of February 2, 1959, without notice to him or anyone, at the time of her departure, as to where she was going, or how long she would be away; that she took most of her personal belongings with her; that she went to Florida and remained there for more than five months, living apart

from her husband; and that she did not return to Virginia until she received notice that her husband had instituted a suit for divorce.

Appellant's own testimony shows that she established herself as a resident and citizen of Florida, an action in conformity with her un-contradicted statement of desire to move to that State, with or without him. She expressed, at no time, a desire to return to Virginia and live there with appellee. Letters of appellee, introduced in evidence by appellant, and her report of a telephone conversation with him, show that he was distressed over their separation, and that notwithstanding this, she expressed no desire or intention to return; but, on the other hand, suggested that he move to Florida. Her actions and declarations immediately prior to the institution of this proceeding express, more forcibly than her words, her state of mind, her intentions, and her attitude towards appellee. It is, moreover, significant that not a single witness was summoned or appeared on behalf of appellant to testify except the child, Olive Marie. No witness testified that she ever complained to anyone about her husband's mistreatment or abuse.

It is apparent there has been no collusion between the parties in this case. Appellee's letters to his wife, and his contributions to the support of her, and the infant they proposed to adopt as their child, evidenced his desire to continue his marital relations. On the other hand, appellant, without sufficient cause, actually broke off the matrimonial cohabitation by leaving her husband's home, going to Florida, and remaining there until he instituted a suit for divorce. Her actions and the attendant circumstances, coupled with the hostile attitude which she manifested towards the appellee strongly tend to show that she intended to desert him.

The appellee had a right to select the place of abode, and it was the duty of his wife to acquiesce in such selection, provided the decision of the husband was not unreasonable, arbitrary or unjust, and not used as a means of provoking a dissolution of the marital relations. *Graves* v. *Graves*, 193 Va., *supra*, at page 661.

The evidence as a whole, and the circumstances related give strength to, and tend to produce belief and confidence in the truth of the statements made by appellee. It is corroboration sufficient to support the decree of the trial court.

The cases of *Phipps* v. *Phipps*, 167 Va. 190, 188 S. E. 168 and *DeMott* v. *DeMott*, *supra*, 198 Va., relied upon by appellant, cor-

rectly set out the legal principles involved; but the facts in each of those cases are readily distinguishable from those here before us.

On consideration whereof, the decrees of the trial court are affirmed. In accordance with the prayer in the brief of the appellant, the appellee will be required to pay her costs in this Court and $200.00 to her counsel for services in the preparation of her brief and the argument of the cause before us.

*Affirmed.*