## CIRCUIT COURT OF ROCKINGHAM COUNTY

In re Karen L. Geary
and James J. Geary

September 23, 1982

Case No. (Chancery) 10017

By JUDGE R. K. WOLTZ

This matter is a joint petition for divorce, the joint petitioners being Karen L. Geary and James J. Geary, husband and wife, and being filed on the former's stationery as an attorney at law was drafted presumably by her. The petition alleges the marriage, the name and age of a child thereof, domicile and residency of each petitioner in this State, age of majority and civilian status for both petitioners, due grounds for venue, a period of uninterrupted separation between them in excess of one year and a separation agreement.

The petitioners jointly pray for a divorce a vinculo matrimonii pursuant to § 20-91(9), affirmation of the separation agreement pursuant to § 20-109.1 and sequestration of the papers of the "suit" pursuant to § 20-124. The petition is manually signed purportedly by each of the joint petitioners.

There is no process, original or mesne. At the taking of depositions, each petitioner in narrative form rather than in question and answer form testified as to the marriage, the jurisdictional facts, the ground for divorce and other matters set forth in the petition. There was one corroborating witness who deposed in response to questions by the female petitioner. The male petitioner was represented by counsel at the taking of the evidence, but other than being present his only part in this phase of proceed-

ings was to forego opportunity to question the corroborating witness.

The question for decision is this: Can a divorce be granted on the joint petition of the parties to the marriage? The answer, which is in the negative, is found in basic principles.

Formerly jurisdiction to grant divorces was vested in the legislature, and no court had "inherent power" to grant divorces and in particular courts of equity acquired no jurisdiction over the subject matter of divorce upon equitable grounds. McCotter v. Carle, 149 Va. 584 (1927). Matters continued thus in the Commonwealth until Act of Assembly of 1847-48, when the legislature, in which jurisdiction over divorce had been vested, transferred that jurisdiction to the courts. Bailey v. Bailey, 62 Va. (21 Gratt.) 43 (1871). It follows then that the jurisdiction of courts over divorce is "entirely statutory and limited" and "purely statutory." McCotter, supra. It is then to the statutes in their grant and conferral of divorce jurisdiction on the courts and their limitation and restriction on such jurisdiction that resort must be had to resolve the question presented by this case. See also Watkins v. Watkins, 220 Va. 1051 (1980).

That act of 1847-48 by which divorce jurisdiction was transferred from the legislature to the Courts contained this provision:

> Such suit shall be instituted and conducted as other suits in equity, except that the bill shall not be taken for confessed; and whether the defendant answer or not, the cause shall be heard independently of the admissions of either party in the pleadings or otherwise. (Emphasis added)

It is remarkable that through one hundred thirty-five years of legislative history this basic provision of the original divorce statute in this Commonwealth has scarcely been changed. The present Code provision, § 20-99, is precisely the same as the original except

for the added provision that no "divorce, annulment or affirmation of a marriage be granted on the uncorroborated testimony of the parties or either of them," and certain additions regarding service of original and mesne process.

This statute, without deletion from its original terms since its adoption, together with later additions, is the deeply rooted, fundamental sine qua non of divorce procedure in Virginia. Note that its terms include the words "suit," "bill" and "defendant." Note that its terms are entirely mandatory excepting a proviso not important here with regard to service of mesne process.

(The original statutory language has also survived unchanged to the extent noted despite constitutional provisions concerning divorce. For the first time legislatively conferred divorce jurisdiction on the courts was mandated by the Constitution of 1851, Article V, § 35. That provision remains nearly unchanged in the Constitution of 1971, Article IV, § 14:

> The General Assembly shall confer on the courts power to grant divorces, change the names of persons, and direct the sales of estates belonging to infants and other persons under legal disabilities, [but] and shall not, by special legislation, grant relief in [such] these or other cases of which the courts or other tribunals may have jurisdiction. (1851 language is bracketed where changed by the 1971 language italicized.))

Bailey v. Bailey, supra, the first case of divorce to reach our highest Court, says at pages 49 and 50:

> The whole scope and purpose of the act [of 1847-48] was to limit the jurisdiction of the courts, and to discourage suits of this

character. Having specified particularly the causes for which the courts must sever the ties which bond together husband and wife, their purpose was to prevent a divorce from being obtained by the collusion of the parties.

This case is also authority that the statute was meant to prevent grant of a divorce "merely upon the consent, or on the default of the <u>party</u> <u>charged</u> . . ." (Emphasis added) The later amendment requiring corroboration of a party or both parties was likewise to prevent divorces by collusion. <u>Forbes</u> v. <u>Forbes,</u> 182 Va. 636 (1944).

This legislative and decisional background of § 20-99 impels the conclusion that the word "suit" is used in its ordinary signification, that is, a judicial proceeding adversarial, at the very least in form, in nature whereby one or more parties plaintiff sue one or more parties defendant.

"Suit" is a generic term, of comprehensive signification, and applies to any proceeding by one person or persons against another or others in a court of justice in which the plaintiff pursues, in such court, the remedy which the law affords him for the redress of an injury or the enforcement of a right. Black's Law Dictionary, 3d Ed.

That same authority contrastingly defines the word petition as:

An application made to a court <u>ex</u> <u>parte</u> or where there are no parties in opposition, praying for the exercise of the judicial power of the court in relation to some matter <u>which</u> <u>is</u> <u>not</u> <u>the</u> <u>subject</u> <u>for</u> <u>suit</u> <u>or</u> <u>action</u> or for authority to do some act which requires the sanction of the court; as for the appointment of a guardian, for leave to sell trust property, etc. (Second emphasis added)

The other statutes in Chapter 6 of Title 20 indicate that the procedure is by suit, and that by suit an adversarial proceeding involving bills of complaints, answers, plaintiffs and defendants is contemplated.

(A cursory review of the sections of the chapter show use of the word suit or suits at least eleven times; plaintiff six times; defendant eighteen times, and respondent twice in § 20-113; § 20-99 itself uses opposing party; § 20-106 uses adverse party; and in addition to bill being used in the basic procedural statute, § 20-99, bill of complaint is used in §§ 20-121.01 and 20-121.02, both recent enactments showing conclusively that despite other changes in the divorce statutes, notably provision for "no fault" divorces, the General Assembly in continuing harmony with the 1847-48 Act means for such proceedings to be adversarial in nature. Note also that in § 20-91(9)(a), the precise subdivision containing the grounds for divorce used by the petitioners here, the word defendant appears twice.)

In conformity with statutory purpose and intent, the Supreme Court has provided in its Rules as follows:

Except when he is sued for divorce . . . a subpoena need not be issued for or served upon a defendant who is a person under disability . . . the procedure described in Code § 8.01-9 constituting due process as to such defendants. Rule 2:4, paragraph 3. (Emphasis added)

(a) Upon the commencement of a suit for divorce . . . process must be served upon the defendant whether the defendant be sui juris or a person under disability. A sui juris defendant may accept service in any such suit . . .

(b) The allegations in a bill of complaint for divorce . . . shall not be taken for confessed. Rule 2:9. (Emphasis added)

It is true that the divorce statutes use the terms petitioning spouse or party and petition; § 20-103, petitioning for pendente lite relief; § 20-108, petition by a party or certain non-parties for revisal of support decrees; § 20-109, petition for change of spousal support; § 20-112, petitioning to reopen proceedings with respect to maintenance and support; § 20-113, granting leave to a petitioner to proceed in Juvenile And Domestic Relations District Court. These statutory usages describe a pleading filed in an originally pending suit or one which has been revived. Thus, they are pleadings of a nature falling within or similar to those encompassed by Black's definition, supra. (For the view that petitions are primarily pleadings used to intervene in pending suits, see §§ 157 et seq., Lile's Equity Pleading and Practice, 3d ed.) These statutory uses of petition serve to underscore powerfully that when the divorce statutes use bill of complaint they mean bill of complaint, that a suit for divorce can only be brought by bill, which by definition excludes institution by a joint petition.

As indicated, two of the case authorities cited above find a statutory purpose in § 20-99 to prevent divorces sought through the collusive action of the parties to the proceeding. Except for the fact that this petition seeking divorce is joint, there is no indication or reason to believe that the divorce sought here is done so through collusion. Nevertheless, it is difficult to imagine a simpler and more direct conduit to a collusive divorce than the use of joint petition. This is a subsidiary reason, in keeping with statutory intent, to deny the relief on joint petition.

Other than transfer of the divorce jurisdiction from the legislature to the courts, the most revolutionary step in that field was embodied in Acts 1960 c. 108. The enactment amended § 20-91 setting forth grounds for divorce from the bond of matrimony to include subsection 9. For the first time in the Commonwealth that amendment provided a ground for divorce which did not involve guilt or fault on the part of

any party to the suit by allowing an a vinculo divorce when the parties to the marriage had "lived separate and apart without any cohabitation and without interruption" for a specified period of time.

By the very nature of this new ground, collusiveness is greatly reduced as a factor in divorce suits. The new ground as originally enacted and with its succession of liberalizing amendments, all representative of a rapid and profound change in social and economic conditions, forms the basis for probably over 95% of a vinculo divorce decrees now granted. But the traditional "fault" grounds alone exist for divorces a mensa and continue to exist for the small minority of divorces a vinculo. Nothing in the statutes authorizes joint petitions for divorce on fault grounds. Nothing in the statutes, including subsection 9 of § 20-99, indicates that despite its difference from other grounds a different procedure is authorized for no fault divorces from those authorized for fault divorces. To say that different substantive grounds for divorce will ex proprio vigore justify judicial establishment of differing procedures is not only anomalous but unsound, particularly in a "purely statutory" area of jurisdiction.

(The original no fault ground enacted in 1960 read as follows:

On the application of either party if and when the husband and wife have lived separate and apart without any cohabitation and without interruption for three years, and at the time of separation were each resident and domiciled in Virginia. Divorce on this ground shall not be granted where service of process is by publication.

Since then beginning in 1962, the requirement for residency and domicile in Virginia and the prohibition against service by order of publication when this ground was the basis of suit were eliminated and pleas of res judicata and recrimination as to other provisions of the section were declared to be no bar to

obtaining divorce on this ground. In 1964 the period of separation was reduced to two years. In 1970 insanity of either party before or after the separation was declared no bar to divorce on this ground. In 1975 the period of separation was reduced to one year, and in 1982 the period was reduced to a mere six months where the parties have entered a separation agreement and no minor children are involved.)

There is yet another anomaly too large to overcome in granting divorce by joint petition, whether on a fault or no fault ground. § 20-96(B) provides as follows:

> The suit, in either case, shall be brought in the county or corporation in which the parties last cohabited, or at the option of the plaintiff in the county or corporation in which the defendant resides if a resident of this State, and in cases in which an order of publication may be issued against the defendant under § 8.01-316, venue may also be in the county or city in which the plaintiff resides.

This provision makes the matter of venue a matter of jurisdiction. White v. White, 181 Va. 162 (1943), Chandler v. Chandler, 132 Va. 418 (1922). § 20-96(B) sets forth three alternate venues for divorce suits. The alternates are not merely matters of venue but of jurisdiction as well. Of the three alternates, only the county or corporation in which the parties last cohabited could ever be used for venue purposes by persons jointly petitioning for divorce. The two alternate venues available under the statute, each expressly requiring the existence of a plaintiff and a defendant, could never be used by jointly petitioning parties and conversely persons in the situation described by the alternates would not have available to them the use of a joint petition for their divorce. This is neither logical on its face nor are any such distinctions authorized by statute.

In short, the method by way of which the petitioners seek relief is one unknown to the statutes as they exist, the courts having no inherent powers to establish or sanction the procedure invoked in this case. Being restricted by the statutory jurisdiction conferred on them, the courts are powerless to fashion relief based on that method. McCotter v. Carle, supra, in quoting Barker v. Dayton, 28 Wis. 367, says:

> It is an undoubted general principle of the law of divorce in this country that the courts either of law or equity possess no powers except such as are conferred by statute; and that, to justify any act or proceeding in a case of divorce, whether it be such as pertains to the ground or cause of action itself, to the process, pleadings or practice in it or to the mode of enforcing the judgment or decree, authority must be found in the statute, and cannot be looked for elsewhere, or otherwise asserted or exercised. (Emphasis added)

For the foregoing reasons the Court is of the opinion that the joint petition for divorce is coram non judice as a consequence of which dismissal of the petition are the limits of its jurisdiction.

N.B. Judge Whiting assisted in research and supplied the valuable case of McCotter v. Carle and a preliminary letter outlining many of the points contained in this opinion.