# CHARLESTON.

EDWARD K. CRISER *v*. BEULAH D. CRISER

(No. 6726)

Submitted November 18, 1930.    Decided November 25, 1930.

(Rehearing denied December 8, 1930.)

*William T. George,* for appellant.
*William P. Samples,* for appellee.

MAXWELL, JUDGE:

In the circuit court of Taylor County, Edward K. Criser sued his wife for an absolute divorce upon the ground of adultery. She filed an answer and cross-bill in which she denied the charge of adultery and prayed for a divorce from bed and board on the grounds of cruel and inhuman treatment

and desertion. The trial chancellor dismissed the wife's cross-bill and granted an absolute divorce to the plaintiff. This appeal follows.

Plaintiff testified in substance as follows: On the evening of March 23, 1929, about 8:15 o'clock he came to his home in Grafton, after having finished his work on the railroad, and found no one there. He stepped out on the street near his home and about 9:15 saw his wife enter the house, turn on all the lights, go to her bedroom, snap on the lights two or three times there, then come out of the house, get her car from the garage and leave. She went toward the west end of Fetterman and picked up Dorsey Warder, and then drove in the direction of Pruntytown. Thereupon he, plaintiff, returned to his house, called Sam Trysler, a taxi driver, and they started toward Pruntytown on the Northwestern Turnpike, a main state route, in the latter's cab. They drove slowly because there were a good many cars on the Pike. About 11:00 o'clock just to the east of Pruntytown they found his wife's car, a Ford coupe, parked on the right of the road, two wheels on the concrete and two off, with no lights burning. Plaintiff and Trysler drove beyond the parked car twenty feet or more, where plaintiff alighted and walked back. He found his wife sitting on Warder's lap, but their clothes were not disarranged. A slight altercation ensued in which plaintiff hit Warder with a rock, and following this he and Trysler drove back to Grafton where he called J. W. Wooddell, a member of the State Police, and the three of them drove back to the scene of the trouble. They did not see his wife's car again, but on their way back to Grafton, just as they came near to town, they saw Warder who, when he saw them, ran away.

In certain particulars the testimony of the plaintiff as above narrated is not clear. At first he claimed that he saw his wife sitting on Warder's lap when he alighted from the taxi and walked back; upon further questioning he denied this and claimed that he saw them in such position as he drove by the parked Ford. He will not state positively that when he came upon them, they were in fact in the act of intercourse.

Trysler's testimony does not corroborate that of the plain-

tiff in all details. He said that the parked car had lights burning on it, either dim or bright, and he did not see who was in the Ford as he and plaintiff passed. He said he got out of his taxi, walked back to the parked car, and although he came within a few feet of the parties, he did not positively identify the man with Mrs. Criser as Warder, but he said it resembled him. Plaintiff introduced several other witnesses who testified that at various times preceding March 23rd, they had seen defendant in company with Warder. None of these witnesses, however, testified that defendant and Warder were in a compromising position when they saw them.

Defendant testified in substance as follows: She spent the evening of March 23rd up until about 10:00 o'clock with some friends and then went home. She switched on the lights in the house in order to put in a 'phone call to her brother who lived at Valley Inn, a point beyond Pruntytown on the Pike. She wanted her little nephew to spend the night with her at her home and asked for permission to come and get him. Thereupon she got her car, started for Valley Inn, and had reached the place where plaintiff found her when her engine became hot. She got out of the car. Just then her husband drove by. No one was with her. After an altercation with her husband, she drove on to Valley Inn, arriving there about 11:00 o'clock. Because her husband accused her of being drunk and trouble would likely result, she did not get her nephew, but came back to Grafton and spent the night at the home of a friend.

Defendant's testimony in the main is corroborated by that of the friends whom she visited in the earlier part of the evening, by her brother and sister-in-law who lived at Valley Inn, and by the friend with whom she spent the night. Defendant stated that she had talked to Warder only one time in her life, and that was two or three weeks prior to March 23rd when she had called Warder and asked him to meet her on Latrobe Street in Grafton where she told him that her husband was suspicious of him, and warned him accordingly. Warder verified the account of this meeting, and further stated that on the evening of March 23rd he spent the entire time in Grafton. In this he is corroborated by a witness.

Can we say that the evidence of plaintiff and his witnesses,

considered alone, without regard to defendant's denials, is clear and positive as to his wife's alleged adulterous acts? Even granting a desire on the part of the defendant and Warder to commit a sexual act, it would seem unlikely that they would have chosen as a place for the consummation of their lustful desires a main travelled highway. The apparent lack of definite conviction on plaintiff's part that his wife and Warder were *in flagrante delicto* when he came upon them, considered in the light of the unpropitiousness of their parking place for sexual conduct, falls short of the clear and positive proof necessary for sustaining the charge.

The presumption of criminal conversation is probably not as strong here as in the following cases: *Huff* v. *Huff*, 73 W. Va., 330; *Schutte* v. *Schutte*, 90 W. Va. 787; *Murrin* v. *Murrin*, 94 W. Va. 605; *Edwards* v. *Edwards*, 106 W. Va. 446. The following language appears in the last mentioned case: "No wife should be pronounced a violator of her most solemn vows, unless upon evidence that will admit of no other conclusion. There must be convincing proof." In the instant case the proof of defendant's alleged dereliction is not such as "to carry conviction to the judicial mind."

We approve the trial chancellor's dismissing the charges in the defendant's cross-bill of cruel and inhuman treatment and desertion. The defendant's testimony as to her husband's acts of physical violence is vigorously denied. It would appear that had there been violent treatment of the defendant by the plaintiff, some of their friends who testified would have known about it. As to the charge that her husband falsely accused her of adultery (not false charges of prostitution as contemplated by the statute), it is admitted by plaintiff that he did accuse defendant of infidelity, but such accusation must be carefully distinguished from that contemplated by Code, chapter 64, section 6: "A charge of prostitution made by the husband against the wife falsely shall be deemed cruel treatment, within the meaning of this section." The law distinguishes between sporadic acts of infidelity and prostitution. *Roush* v. *Roush*, 90 W. Va. 491; *Schutte* v. *Schutte, supra,* p. 793.

Relative to defendant's allegation of plaintiff's desertion of

her, it affirmatively appears that within a few days after the night of March 23rd, plaintiff did leave his home and took a room elsewhere. At the same time he instituted the present suit. It likewise appears that until defendant obtained a decree against plaintiff for temporary alimony, he paid the light, water and grocery bills for defendant. The living of one spouse apart from the other pending divorce proceedings is not desertion. ''The *bona fide* withdrawal from cohabitation for adverse judicial proceedings, such as procuring a nullity of marriage, or bringing of libel for divorce because of the partner's adultery, is not to be alleged as legal desertion on the part of such spouse, whatever the fate of the suit, or reasonable delays attending it, for this is not wilful and wrongful; and hence the time during which a suit between married persons for divorce is pending cannot be counted in reckoning the period of desertion if the divorce action was begun in good faith, but not otherwise.'' Schouler, Marriage, Divorce, etc., Vol. 2 (6th Ed.), sec. 1620. ''Where one spouse in good faith brings proceedings for a divorce against the other though in fact, as it may develop, there is no ground for divorce, it is the general rule that there can be no desertion by the one of the other pending the divorce proceedings, as it is presumed that no return would be then permitted; and, furthermore, the complaining spouse, by a return to matrimonial cohabitation, might be held to have condoned the ground on which the proceeding for a divorce was based.'' 9 R. C. L., sec. 147, p. 360. See, to like effect, Bishop on Marriage, Divorce and Separation, Vol. I, page 730; 19 Corpus Juris, page 80. This rule is recognized in *Craig* v. *Craig*, (Va.) 87 S. E. 727, and *Vickers* v. *Vickers*, 95 W. Va. 323.

In the light of the foregoing, we reverse the decree of the trial chancellor and dismiss the bill.

*Reversed; bill dismissed.*