## Staunton

KATHERINE O'BRIEN SMITH v. HARRY LEE SMITH, JR.

September 2, 1960.

Record No. 5091.

Present, Eggleston, C. J., and Buchanan, Miller, Whittle, Snead and I'Anson, JJ.

The opinion states the case.

*Jerrold G. Weinberg (Fine, Fine, Legum, Weinberg & Schwan,* on brief), for the appellant.

*Henry Bowden* and *C. Lydon Harrell, Jr.,* for the appellee.

BUCHANAN, J., delivered the opinion of the court.

This suit was instituted on January 3, 1957, by the appellant, Katherine Anne O'Brien Smith, against her husband, Harry Lee Smith, Jr., alleging that he had been guilty of cruelty and desertion, had refused to support her and their children and establish a home for them. She prayed for a separation, not a divorce, and for support for herself and the children. On January 18, 1957, he filed an answer denying the charges and a cross-bill alleging that she deserted him on December 30, 1953, and praying for a divorce from her *a vinculo matrimonii*. The parties will be referred to herein as complainant and defendant.

The cause was referred to a commissioner to take evidence and report his findings to the court. On May 7, 1957, the commissioner heard the testimony of the complainant and her father and mother, and the testimony of the defendant and his witness, Mary Ann Vance. In the course of her testimony the complainant was asked whether she would live with her husband now and she replied, "Not unless he changes completely." At the conclusion of the hearing the commissioner announced that there was no proof of desertion on the part of the complainant on December 30, 1953, nor any proof that the defendant had been guilty of cruelty or of failure to provide a home for the complainant, "so the parties are just where they were." Defendant's counsel then asked for a continuance "for another witness" who "might prove desertion."

Thereafter, on June 25, 1957, the defendant filed a "Supplemental Cross-bill" alleging that the complainant had deserted him on May 7, 1957, the date of her testimony before the commissioner, as stated, and prayed for a divorce *a mensa et thoro* on that ground. The complainant filed her answer denying this allegation, and later, on September 17, 1957, filed a "Supplemental Answer and Grounds of Defense," charging that the defendant had committed adultery on May 6, 1957, the day before the first depositions were taken. She did not ask for a divorce on that ground.

On September 18, 1957, and again on December 20, 1957, further testimony was given before the commissioner by the defendant and Mary Ann Vance, with whom it was charged that the defendant had committed adultery; and by the complainant and five of her witnesses. In her testimony the complainant again said, "I do not want to live with him because of his cruelty and lies." The commissioner filed his report on November 25, 1958, in which he stated that while there was doubt that the complainant intended to desert

her husband on January 1, 1954 [December 30, 1953], it was perfectly clear from her declarations in her testimony that she did not intend to live with him again; that there was no proof of physical cruelty and no proof of adultery on the part of the defendant. He recommended that complainant's bill for separate maintenance be dismissed and that the defendant be granted an absolute divorce from the complainant.

After reviewing the evidence the trial court in a letter to counsel stated that the evidence failed to establish that the complainant deserted defendant on January 1, 1954, and failed to establish that the defendant had ever been guilty of cruelty toward the complainant which would amount to constructive desertion, but that complainant's failure to return to her husband upon sufficient recovery from her illness of that time constituted desertion which "culminated" in her declaration of May 7, 1957, that she would not return to him unless he changed completely. The court also agreed with the commissioner that the evidence failed to establish adultery on the part of the defendant as charged by the complainant. Accordingly the decree appealed from was entered granting to the defendant a divorce *a vinculo matrimonii* from the complainant and awarding to her the custody of their two children, with an allowance for the support of the children but none for the complainant.

These parties were married in 1948 and had two children, a daughter, Brenda Anne, born May 15, 1949, and a son, Joseph Lee, born August 10, 1952. The defendant had joined the army in 1942 and became a commissioned officer in the year of their marriage. At the time he first testified he was a captain and stationed at Fort Myer, Virginia. When he testified in December, 1957, he had been released from active duty, he said, due to "the economy cut." The complainant had also been in the service as a WAVE and receives $102 a month as disability retirement pay. After their marriage they lived at various posts and his wife and the children spent a good deal of time with her parents in Norfolk. He was sent to Puerto Rico in September, 1953, and in December, 1953, he came back to Norfolk and took his wife and children there.

The complainant was an epileptic, of which he was thoroughly acquainted before their marriage. Soon after their arrival in Puerto Rico she had an attack of epilepsy which rendered her unconscious and she was taken to an army hospital where she was treated and later released. She testified that while she was in the hospital her

husband wanted a divorce because he was told that a person with epilepsy always went crazy. Her mother testified that the defendant called her twice on long distance stating that his wife was ill and in the hospital, where they had done all they could for her; that she had to leave Puerto Rico but she refused to do so and if she was not out by Wednesday the army would put her in a strait jacket. He asked her parents to come and get her.

Her mother and father went immediately by plane to Puerto Rico, where they found their daughter in such bad physical condition that they practically had to carry her. Her clothes were already packed. They brought her back to Norfolk, arriving on January 1, 1954, and she was put in a hospital the same morning. She was under the care of two doctors for a while and at the time she testified in May, 1957, she was still under the care of one of them in an effort to be cured of her epilepsy.

Complainant's evidence was to the effect that she did not desert the defendant on December 30, 1953, but left Puerto Rico only at the instance of the defendant, and that since that time he had not come to see her or the children and had never asked her to return and live with him. She testified also that he was cruel to her while she was there and on one occasion he held her down with his knee in her stomach and hit her in the face with his fist, knocking out one of her teeth. But she also testified that on account of her religion she did not want a divorce and had no reason for a divorce.

Soon after her arrival in Norfolk the problem arose about her husband furnishing support for her and the children and for her medical expenses, and much of the evidence related to that subject. She went with her mother to a bank, where the complainant and defendant had a joint account, for the purpose of making a withdrawal to take care of hospital bills and clothing for the children, and there learned that on January 14, 1954, two weeks after her arrival in Norfolk, the defendant had withdrawn $800 from the account, leaving a balance of only $3.43. He said he did this because he had received a letter from her attorney a few days before stating that she wanted support. Correspondence in the record shows efforts made to obtain from him support for the complainant and the children through his commanding officers and with the War Department. On October 23, 1956, he wrote from Fort Myer to complainant's attorney asking for an interview with him and the complainant, as

a result of which he agreed to allot $282 a month for this purpose and to make up back payments of $200.

An aunt of the complainant testified that on numerous times before the parties went to Puerto Rico she had heard the defendant say to the complainant, after some disagreement, "What's the matter with you, do you want a divorce?" The complainant replied that she would not give him a divorce; that they were both Catholics and the church did not believe in it. Another of complainant's witnesses testified that defendant was cool toward the complainant and on an occasion when she was ill and in a hospital he had ridiculed and criticized her physicial appearance.

The defendant denied that he had ever been cruel to the complainant in any manner or that he had deserted her. He testified at the September, 1957, hearing that he wanted her and the children to live with him and would drop his suit if they would do so. He testified that the last time he lived with the complainant was in Puerto Rico in December, 1953; that it was his understanding that she left Puerto Rico to obtain medical care and would return when she was feeling better; that he wrote to her about three times requesting her to return but she evaded the issue in her letters.

The letters he wrote are in evidence. They were written in January, February and March, 1954. None of them indicated any affection for her or any desire that she return. In the first one he expressed the hope that the children were well and said he could come and get them "and when you get well I could get you here also." In the next he inquired, "When do you plan to bring the kids here?" And in the third he wrote, "I would like to know when you and the kids can come here. Like I said you are there on a visit and there were no orders sending you there for you left and turned down Army travel." He stated that he did not write her any more about coming back after March, 1954. On the contrary, in January, 1955, he brought suit for divorce against her in Puerto Rico, alleging in his bill, which he swore to, that she deserted him on December 30, 1953, "in spite of [his] express desire." The suit was dismissed for lack of jurisdiction.

The defendant testified that the next time he saw his wife and children after December, 1953, was in November, 1956 (which apparently was at the time of the conference with her and her attorney). Asked why he had not seen them sooner, he replied that he was overseas at the time. But he further testified that he left

Puerto Rico on May 9, 1956, and reported for duty at Fort Myer on May 31, 1956, and had been there until the time he testified in September, 1957. From Fort Myer he wrote a letter dated May 18, 1957, which was during the pendency of this suit, saying that he had submitted a request for quarters there for himself, his wife and children, but there was a waiting list and he would be notified when an apartment became vacant. He wrote that he was in debt and it would be cheaper to live together than apart and "You will join me here or I will get out of the service and leave you without income." He did not write again that he had quarters for her.

As we have frequently said, and recently repeated, desertion is a breach of matrimonial duty, and is composed, first, of the actual breaking off of matrimonial cohabitation, and second, an intent to desert in the mind of the offender. Both must combine to make the desertion complete. *Nash* v. *Nash*, 200 Va. 890, 893, 108 S. E. 2d 350, 352.

Mere separation by mutual consent is not a desertion by either party. When the husband assents to, or acquiesces in, the wife's separation from him, he cannot maintain a suit for divorce on the ground of desertion. *Arrington* v. *Arrington*, 196 Va. 86, 91, 82 S. E. 2d 548, 551.

A separation by mutual consent will be presumed to continue by mutual consent until one of the parties withdraws consent and offers to resume cohabitation, in which case the burden is on the offering party to prove that the offer was made in good faith and was refused without justification. 27A C.J.S., Divorce, § 123(6), p. 421.

Furthermore, the desertion relied on for divorce must be alleged and proved to have occurred prior to the bringing of the suit, not based upon some act or conduct alleged to have taken place during its pendency. *Lee* v. *Lambert*, 200 Va. 799, 802, 108 S. E. 2d 356, 358; *Hudgins* v. *Hudgins*, 181 Va. 81, 87, 23 S. E. 2d 774, 777; *Craig* v. *Craig*, 118 Va. 284, 292, 87 S. E. 727, 730; *Criser* v. *Criser*, 109 W. Va. 696, 700, 156 S. E. 84, 85-6; *Besche* v. *Besche*, 209 Md. 442, 452, 121 A. 2d 708, 713.

In *Hudgins* v. *Hudgins, supra*, 181 Va. at 87, 23 S. E. 2d at 777, we said:

"It seems well settled that the absenting of one spouse from the other after the institution and during the pendency of a suit for a divorce, as here, is not desertion in law and it is not an act upon which a suit for desertion may be predicated. Indeed, in many

cases it is highly proper that such physical separation should be, and under many circumstances it is, commendable."

The ground for a divorce alleged by the defendant in his cross-bill filed January 18, 1957, was desertion of him by the complainant on December 30, 1953. It was clearly shown by the evidence, and so found both by the commissioner and the court, that she did not desert him on that date. Their separation then was not only with his acquiesence and consent, but at his request. No intent on her part at that time to desert him was proved, nor was it shown that such intent existed up to the time she testified in the suit that she did not want to live with him any more. The defendant necessarily recognized that to be true when he filed his supplemental cross-bill on June 25, 1957, praying for a divorce from bed and board on the ground that the complainant deserted him on May 7, 1957, which was the day she testified in the pending suit, and which cannot serve him as a·ground for divorce in this suit.

■ The defendant was, therefore, not entitled to the divorce awarded him by the decree appealed from. The separation of the parties having occurred with the consent and at the instance of the defendant, the complainant did not thereby forfeit her right to reasonable support and maintenance, which right continues to exist until it is shown that she has in fact hereafter deserted him by refusing to live with him without just cause. *Cf. Arrington v. Arrington, supra.* The proper amount to be allowed for her support and for the support of the children should be determined by the court below upon evidence as to the situation and circumstances of the parties at the time of such hearing.

The decree appealed from is therefore reversed so far as it grants a divorce to the defendant and denies support and maintenance to the complainant. The divorce so granted to the defendant is annulled, and the cause is remanded to the court below with direction to hear evidence and fix a reasonable amount which the defendant shall pay for the support and maintenance of his wife and children.

The defendant shall pay the costs of this appeal and a fee of $250 to complainant's attorneys for their services in this court.

*Reversed and remanded.*