WILLIAM JAMES SPROTT

V.

NANCY JEAN HANEY SPROTT

Record No. 832047

April 24, 1987

Present: Carrico, C.J., Cochran,* Poff, Compton, Stephenson, Russell, and Thomas, JJ.

---

* Justice Cochran participated in the hearing and decision of this case prior to the effective date of his retirement on April 20, 1987.

*Henry L. Sadler, III*, for appellant.
*Alexander P. Smith* for appellee.

POFF, J., delivered the opinion of the Court.

Appealing from a no-fault divorce decree granted his wife, a husband asks us to reverse the award of spousal support.

William and Nancy Sprott were marrried on August 8, 1973. On November 4, 1981, Nancy filed a bill for divorce alleging cruelty and constructive desertion. William filed a cross-bill seeking a divorce on the grounds of desertion and adultery. A commissioner in chancery heard the evidence *ore tenus* and filed a report. The

commissioner found that (1) Nancy had failed to prove cruelty or constructive desertion; (2) William had failed to prove adultery; (3) Nancy was guilty of desertion and, hence, not entitled to spousal support; and (4) Nancy was entitled to an attorney's fee.

The chancellor upheld all the commissioner's findings except the third. Rejecting William's allegation of desertion, he found that the separation resulted from a "gradual breakdown in their relationship" and that "[t]he blame for that separation rests with both parties but does not rise to the level of a wilful desertion". By final decree entered September 30, 1983, the chancellor granted Nancy a no-fault divorce, awarded her $300 per month as spousal support, and allowed her an attorney's fee of $1,500.

On appeal, William contends that the chancellor erred in affirming the commissioner's finding against his claim of adultery; in overruling the commissioner's finding of willful desertion; and in awarding Nancy spousal support and attorney's fees.

■ We have consistently defined the standard of appellate review applicable here.

On appeal, a decree which approves a commissioner's report will be affirmed unless plainly wrong, . . . but where the chancellor has disapproved the commissioner's findings, this Court must review the evidence and ascertain whether, under a correct application of the law, the evidence supports the findings of the commissioner or the conclusions of the trial court. . . . Even where the commissioner's findings of fact have been disapproved, an appellate court must give due regard to the commissioner's ability, not shared by the chancellor, to see, hear, and evaluate the witnesses at first hand.

*Hill* v. *Hill*, 227 Va. 569, 577, 318 S.E.2d 292, 296-97 (1984) (citations omitted).

■ Because we cannot say that the chancellor's ruling approving the commissioner's finding that William failed to prove his charge of adultery is plainly wrong, we will affirm that ruling. This decision does not, however, dispose of the crucial issue on appeal. Under Code §§ 20-107.1 and 20-91(6), a spouse who has "willfully deserted or abandoned the other" is not entitled to spousal support. The commissioner and the chancellor disagreed on the question of desertion, and we must review the record to determine whether the evidence, under a correct application of the

law, supports the commissioner's finding or the chancellor's conclusion. We look primarily to Nancy's testimony.

For several years, the parties enjoyed a good marital relationship. Gradually, Nancy began to build what she described as a "psychological wall" between herself and William. After each perceived affront, she added another brick to the wall. Eventually, she found herself unable to talk with her husband or touch him. In 1977 and for the last four years the parties lived together, Nancy withdrew from sexual relations with William. Nancy acknowledged that she had built similar walls and had withdrawn from sexual relations with her spouses in both her previous marriages.

Nancy filed her bill for divorce on November 4, 1981 and left the marital home the same day. Keith James, her second husband, picked her up at a friend's house. The couple and James' young daughter by another marriage drove to Danville to visit the couple's adopted son who was enrolled at Hargrave Military Academy. Nancy, James, and James' daughter registered at a motel and spent the night in two connecting rooms. Shortly thereafter, William filed his cross-bill alleging adultery. Nancy, who identified herself to others at the motel as "Nancy James", testified that she and James had a "general" discussion about the "possibility" of "going back together again". She denied, however, that they had engaged in sexual intercourse.

The transcript of the evidence confirms the commissioner's report that he had heard no testimony that Nancy "ever suffered physical or mental cruelty by the defendant." Accordingly, the commissioner found that "[h]er voluntarily leaving the home . . . without just cause or excuse . . . constituted a desertion of the marriage." On the other hand, the chancellor concluded that Nancy's departure was legally justified by a "gradual breakdown in their relationship". We believe the chancellor erred, both in law and in fact.

For many years, this Court adhered rigidly to the rule that "one spouse is not justified in leaving the other, unless the conduct of the other is sufficient to establish the foundation of judicial proceeding for a divorce." *Lawyer* v. *Lawyer*, 207 Va. 260, 264, 148 S.E.2d 816, 819 (1966) (citations omitted). The rule has been relaxed in more recent decisions. *Rowand* v. *Rowand*, 215 Va. 344, 346, 210 S.E.2d 149, 151 (1974) (wife who left at husband's order "was free from legal fault"); *Capps* v. *Capps*, 216 Va. 382,

385, 219 S.E.2d 898, 900 (1975) (wife who left because of single act of physical abuse was free from legal fault); *Breschel* v. *Breschel*, 221 Va. 208, 212, 269 S.E.2d 363, 366 (1980) (wife who left was free from legal fault when she reasonably believed continued cohabitation endangered her health).

■ But we have never held, and we decline here to hold, that one spouse is legally justified in leaving the other merely because there has been a gradual breakdown in the marital relationship. Rather, we hold that the chancellor erred in his application of the law to the evidence in this case.

■ We hold further that the chancellor erred in the factual conclusion he drew from the evidence, *viz.*, that Nancy's departure was motivated solely by a gradual breakdown in the marital relationship. In our view, the evidence shows that the psychological wall Nancy built between herself and her husband created a tension which prompted her decision to leave the marital home but that her decision was not legally justified by the conduct of her husband.

We agree with the commissioner that the departure "was carefully calculated to coincide with a previously arranged trip to Danville, Virginia, with Keith James." Specifically, we believe that Nancy's departure was pre-planned with intent to break off marital relations with William. Hence, we uphold the commissioner's finding that Nancy's departure constituted willful desertion.

Nevertheless, contending that the chancellor's ruling to the contrary was right, even if for the wrong reason, Nancy invokes the rule, first applied in *Hudgins* v. *Hudgins*, 181 Va. 81, 87, 23 S.E.2d 774, 777 (1943), that "the absenting of one spouse from the other after the institution and during the pendency of a suit for divorce . . . is not desertion in law". We have recently considered two appeals in which we were urged to engraft a qualification upon that rule. In *Roberts* v. *Roberts*, 223 Va. 736, 741, 292 S.E.2d 370, 372 (1982), the appellant husband maintained that the rule should never be applied when it appears that the suit for divorce "turns out to be frivolous, a mere sham", because

> an excessively rigid application of the . . . rule would permit a wife, who wished to desert her husband, but also wished to claim spousal support from him, to institute a frivolous suit against him, based on charges for which she has no evidence,

and thereafter to desert him. She could later amend her suit to claim a divorce on the ground of one year's separation, but he would be barred from asserting her desertion as a defense to her claim for spousal support.

In *Byrd* v. *Byrd*, 232 Va. 115, 119, 348 S.E.2d 262, 264 (1986), the appellant husband argued that the *Hudgins* rule should not be applied because

the wife's bill of complaint charging him with cruelty was "orchestrated" before her departure merely to preserve her claim to spousal support; that it was a sham, erected to shield her from a charge of desertion so that she might invoke the rule . . . .

Although in both cases we endorsed the logic of these arguments in the abstract, we had no occasion to apply the exception because the records in those cases showed that the suit for divorce was filed in good faith. But we apply the exception here.

Nancy admitted that she "had given up totally on the marriage" in June 1981 but remained in the home until the day her bill of complaint was filed four months later. In support of her charge of cruelty, Nancy alleged that "the defendant has verbally abused your complainant and has refused to provide the monies necessary to pay for food and other household expenses; that the defendant has allowed the heat to be turned off in the parties' home and has removed the portable heater from complainant's bedroom."

The record before us contains no corroboration of Nancy's charges of verbal abuse. On cross examination, Nancy agreed that "[t]here was always enough food in the house". The heat was not turned on in the month of October, and Nancy was required "[s]ome days . . . to use a plug-in heater" and, at night, an electric blanket on her bed. Otherwise, Nancy testified, "there has never been any physical mistreatment at all."

■ We need not decide whether Nancy's allegations would be sufficient, if proven, to support her charge of cruelty and her claim of constructive desertion. Her own testimony contradicts her allegations and shows that her bill of complaint was factually devoid of any viable legal predicate. Indeed, the record compels the conclusion that the filing of Nancy's bill of complaint, her departure from the marital home, and her trip to Danville were carefully

timed to enable her to leave William and pursue a reconciliation with her former husband without jeopardizing her claim to spousal support. In such case, we will not apply the rule in *Hudgins*.

█ We find no error in the chancellor's award of the attorney's fee, and we affirm the judgment insofar as it decrees a final divorce. We hold, however, that the trial court erred in disapproving the commissioner's finding that Nancy was guilty of willful desertion and in awarding her spousal support. We will reverse the decree and remand the cause for the entry of a new decree consistent with our decision.

*Affirmed in part, reversed in part, and remanded.*