Present: Hassell, C.J., Keenan, Koontz, Lemons, Agee, and
Goodwyn, JJ., and Lacy, S.J.

MARRILL W. PURCE

v. Record No. 062368     OPINION BY SENIOR JUSTICE
                                ELIZABETH B. LACY
                                January 11, 2008
VANESSA C. PATTERSON

        FROM THE CIRCUIT COURT OF WESTMORELAND COUNTY
                Joseph E. Spruill, Jr., Judge

     In this appeal, Marrill W. Purce asks us to reverse the

judgment of the trial court holding that he willfully

abandoned his wife, Dorothy M. Purce, who died on January 19,

2005, and therefore, under Code § 64.1-16.3, was not entitled

to an elective share of her augmented estate.

                            FACTS

     We recite the facts based on a written statement of facts

signed by the trial court.  Dorothy and Marrill were married

in July 1988.  Dorothy had many health problems throughout the

marriage and, while the couple lived together, friends and

neighbors often took Dorothy to doctors' appointments, cleaned

the home, and cooked meals.  Dorothy's daughter, Vanessa C.

Patterson, testified that Marrill did not visit Dorothy in the

hospital during her illnesses and did not take care of her

when she returned home.

     Marrill and Dorothy had a tumultuous marriage.  Dorothy

complained to her daughter and friends of Marrill's treatment

of her. In April 1997, Dorothy obtained a protective order against Marrill based on his physical abuse of her, and she renewed the order a few months later. The protective order expired in June 1998, and the parties resumed cohabitation. In October of 1998, Dorothy sought another protective order, claiming she was under severe stress because Marrill's girlfriend was harassing her, Marrill was drinking and staying out late every night, and she was afraid that she might have a stroke. The court denied the protective order.

In June 2000, Dorothy and Marrill agreed that Dorothy would leave the marital residence. After the separation, in August 2000, Dorothy sought a third protective order, claiming Marrill had threatened to kill her; the petition was denied. Dorothy filed a fourth petition for a protective order in June 2002, claiming among other things that Marrill hurt her arm and threatened her; however, she withdrew this petition.

Dorothy filed for a divorce in January 2003, identifying the grounds for the divorce as living separate and apart for more than one year. The divorce decree was never issued, and the parties remained legally married at the time of Dorothy's death.

Dorothy brought into the marriage rental properties she owned. Marrill, on the other hand, was retired during most of the marriage. Marrill did not participate in the management

of the rental properties, and he did not provide any financial support to Dorothy after the separation.  During her last illness, Dorothy lived with her daughter in New Jersey.  Marrill did not know Dorothy was in New Jersey, nor did he visit, call, or otherwise communicate with her.

DISCUSSION

In this appeal, Marrill first asserts that in determining whether he abandoned his wife, the trial court erred in considering facts occurring subsequent to the couple's agreed-upon separation.  Marrill argues that post-separation conduct is not relevant to whether one spouse abandoned the other.  We disagree.

Code § 64.1-16.3(A) specifically addresses the period of abandonment that is relevant to a claim for an elective share:

> If a husband or wife willfully deserts or abandons his or her spouse and such desertion or abandonment continues until the death of the spouse, the party who deserted the deceased spouse shall be barred of all interest in the estate of the other by intestate succession, elective share, exempt property, family allowance, and homestead allowance.

(Emphasis added.)  The clear language of this Code section requires a court to determine whether the willful desertion or abandonment continued "until the death of the spouse" and that determination is not limited to consideration of actions occurring prior to a separation, should one have occurred. "In construing a statute, we must apply its plain meaning, and

'we are not free to add [to] language, nor to ignore language, contained in statutes.' " BBF, Inc. v. Alstom Power, Inc., 274 Va. 326, 331, 645 S.E.2d 467, 469 (2007) (quoting SIGNAL Corp. v. Keane Fed. Sys., 265 Va. 38, 46, 574 S.E.2d 253, 257 (2003)). Based on the statutory language recited above, we conclude that the trial court did not err in considering facts occurring subsequent to the separation in determining whether Marrill willfully abandoned Dorothy for purposes of entitlement to an elective share of her augmented estate.

Marrill's remaining four assignments of error challenge the sufficiency of the evidence to support a finding of abandonment. Whether Marrill abandoned Dorothy is a mixed question of law and fact. Thus, "we give deference to the trial court's findings of fact and view the facts in the light most favorable to the prevailing party, but we review the trial court's application of the law to those facts de novo." Collins v. First Union Nat'l Bank, 272 Va. 744, 749, 636 S.E.2d 442, 446 (2006).

The term "abandonment" is not defined in the statutes governing elective share claims. We agree with the parties that principles developed in domestic relations law relating to abandonment are helpful in determining the issue of abandonment under Code § 64.1-16.3.

4

In the domestic relations context, "abandonment" is generally used synonymously with "desertion."  This Court has defined desertion as "a breach of matrimonial duty – an actual breaking off of the matrimonial cohabitation coupled with an intent to desert in the mind of the deserting party." Petachenko v. Petachenko, 232 Va. 296, 298-99, 350 S.E.2d 600, 602 (1986).  Domestic relations cases have considered "matrimonial duty" to include cooking, cleaning, support, and contributing to the well-being of the family.  See Goodwyn v. Goodwyn, 222 Va. 53, 54-55, 278 S.E.2d 813-14 (1981); Fussell v. Fussell, 182 Va. 720, 722, 30 S.E.2d 555, 556 (1944). Mindful of these domestic relations cases, in resolving the issue in this case we will use the word "abandonment" to mean a termination of the normal indicia of a marital relationship combined with an intent to abandon the marital relationship.

While the term "abandonment" is similarly defined for purposes of domestic relations and elective share matters, there are significant differences in the analysis of the evidence when resolving the issue in the domestic relations and elective share contexts.  For example, as we have noted, the relevant time period for determining abandonment for purposes of Code § 64.1-16.3 extends to the time of the deceased spouse's death and is not limited to the moment of separation, or the filing of a petition for divorce, as it is

5

when abandonment is the ground upon which a divorce is sought. Compare Sprott v. Sprott, 233 Va. 238, 242, 355 S.E.2d 881, 883 (1987) (finding desertion by wife based on her actions leading to her departure from the marital home), Breschel v. Breschel, 221 Va. 208, 212, 269 S.E.2d 363, 366 (1980) (finding no desertion because wife was legally justified in leaving based on facts leading up to her departure), and Hudgins v. Hudgins, 181 Va. 81, 87, 23 S.E.2d 774, 777 (1943) ("[T]he absenting of one spouse from the other after the institution and during the pendency of a suit for divorce . . . is not desertion in law."), with Code § 64.1-16.3. A second distinction is the effect of the parties' agreement to separate or to seek a divorce. In an elective share analysis, an agreed separation or petition for divorce is relevant evidence of the termination of cohabitation, but is not evidence which defeats a finding of willful abandonment. In contrast, such an agreed separation or divorce petition may preclude a claim of abandonment in a divorce action because a finding of abandonment in that context is based on fault which is inconsistent with parties agreeing to terminate cohabitation or to seek a divorce. With these distinctions in mind, we now turn to the evidence in this case.

In this case, the mutual decision to cease cohabitation and Dorothy's divorce petition based on living separately for

6

more than a year implies that the termination of the marital relationship was not the product of willful abandonment but rather an agreement between the parties. As discussed above, however, this evidence is not dispositive in the context of an elective share claim. The relevant evidence is Marrill's conduct and his intent. Here, the record shows that both before and after Dorothy and Marrill agreed to separate, Marrill's conduct showed a lack of support for Dorothy and the marital relationship. While living together or apart, Marrill provided Dorothy with little or no support or care during her illnesses and recoveries. Financially, Dorothy brought her rental properties into the marriage and managed the properties alone while living with Marrill. Marrill did not contribute to Dorothy's support in this regard.

After the separation, Marrill apparently did not communicate with Dorothy in any meaningful way because he did not even know she was living in New Jersey and did not acknowledge her final illness in any way. He did not support Dorothy financially, emotionally, or physically. Although he testified that he did not want the marriage to end, the trier of fact was not required to believe this testimony; indeed, the trial court found Marrill's testimony incredible. Nothing in the record showed Marrill tried or intended to reconcile with Dorothy. At the time of Dorothy's death, Marrill had

ceased to perform any marital duties.  Therefore, we conclude that the evidence is sufficient to support the trial court's holding that Marrill abandoned Dorothy prior to and continuing until the time of her death under Code § 64.1-16.3.

Accordingly, we will affirm the judgment of the trial court that Marrill was not eligible for an elective share of Dorothy's augmented estate.

Affirmed.