COURT OF APPEALS OF VIRGINIA

Present: Judges Petty, AtLee and Senior Judge Annunziata
Argued by teleconference

PUBLISHED

KUMAR SANGARAN

OPINION BY
v.       Record No. 1898-19-4        JUDGE RICHARD Y. ATLEE, JR.
JUNE 23, 2020

SHABNAM SACHDEVA

FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
Jeanette A. Irby, Judge

Ryan M. Probasco (Demetrios C. Pikrallidas; Pikrallidas Law,
on briefs), for appellant.

John C. Whitbeck, Jr. (Kristin L. Quirk; Fred M. Rejali;
Whitbeck Cisneros McElroy, P.C.; Law Offices of Fred M.
Rejali, on brief), for appellee.

Kumar Sangaran appeals the Circuit Court of Loudoun County's decision to grant

appellee Shabnam Sachdeva's "Motion to Stay Arbitration and to Discharge Obligations Set

Forth in the Agreement to Arbitrate." Sangaran argues the circuit court erred in finding: (1) that

he had anticipatorily repudiated the parties' existing Agreement to Arbitrate and (2) that

Sachdeva, through her counsel, accepted that anticipatory repudiation prior to Sangaran revoking

that repudiation by clearly expressing his intent to proceed with arbitration. For the following

reasons, we reverse.

I. BACKGROUND

"[W]e view the evidence in the light most favorable to the prevailing party, granting it the

benefit of any reasonable inferences." Congdon v. Congdon, 40 Va. App. 255, 258 (2003).

Sangaran and Sachdeva married in 2002. They have no children. They have been in

protracted divorce litigation for many years; Sangaran filed the complaint for divorce in 2013.

The parties participated in mediation on November 20, 2017, and they entered into a partial marital settlement agreement as a result of the mediation. On December 31, 2017, the parties signed an Agreement to Arbitrate in which they agreed to settle "[a]ll remaining claims pertaining to equitable distribution of the parties' property and attorney fees" via arbitration.

On September 13, 2018, Sangaran sent the following email to his attorneys (Jay Meyerson, Jon Huddleston, and Meena Rajan), Sachdeva's attorneys (John Whitbeck, Brittany Gordon, and Fred Rejali), and others.[1]

> Hi Jay,
>
> I have decided to withdraw (as of today) my claim to my marital property ($1.7mil – depicted [sic] to nothing at this time) from Shabnam Sachdeva (wife), it is all fraud money and as I said to you few years ago, I was going to donate my marital assert [sic] to our Veterans Administration, and you advised against as it will be considered vindictiveness.
>
> At this time, please prepare and file a no contest divorce immediately. Shabnam Sachdeva can take all my marital assert [sic] and stick it up in every hole she has. I DO NOT want a penny from this bitch, I actually can give her another penny or two if she need some.
>
> Her counsel, Whitbeck during the last deposition has discriminated me [sic], laughed at me, bullied and intimidated me, told me I don't look doctor [sic] (Whitbeck is a mega idiot)[.] He continued to lie to the court that I was trying to kill my wife, her mother and her sister without any evidence.
>
> Whitbeck also exposed Shabnam Sachdeva's insurance fraud patient document and all her other frauds (by questioning me) thru [sic] the deposition transcript. He also flashed the 'smoking gun' fraud patient document in a public court, letting the whole world

---

[1] The Court has elected to redact the more inflammatory, *ad hominem* attacks from Sangaran against opposing counsel. Despite its length and extraneous content, we nonetheless include the majority of Sangaran's email to provide context for interpreting his intent and Sachdeva's counsel's response. Minor but pervasive spacing and formatting errors in the email have been fixed for the reader's benefit. Except where noted, punctuation and typographical errors that do not interfere with comprehension are presented as originally written.

know that Shabnam Sachdeva has committed insurance fraud, please review court transcripts. Whitbeck's stupidity has no limits.

. . . .

As per my divorce, please file it as soon as possible. My clearance expired [at the] end of last year. I have been patiently waiting to get my divorce over with so I can renew my clearance without reporting all the frauds, money laundering, tax fraud etc. But now, I will just file all this in my application and see what happens.

I will reach out to the Virginia Medical Board and inquire about my beautiful wife's CME investigation status. Since I am the one attended [sic] most of the CME's for Shabnam Sachdeva for more that [sic] 5 years, I need to know the impact that might have on me. All said and done, Shabnam Sachdeva really deserves a jail time. Some foreigner's [sic] come to our country and make a mockery of the American System. As a die-hard American, working the our [sic] country's Defense for over 30 years AND seeing our Americans die or [sic] the country I just have a need to do the right thing.

Just so Whitbeck the moron understands, when Trump said "drain the swamp[,]" he actually meant drain the Republican Party, seriously he was talking about Whitbeck. I also would like to THANK: Jay, Meena and Jon for sticking with me for so long, at this time, I will no longer need your services and cease representing me as of today, I will make arrangements to make payments to close my accounts. I believe, overall I have a $50,000 outstanding bill.

Jay, please file my no contest divorce and close my account. Please do not converse with the OC's as of today.

THANK YOU VERY MUCH AND HAVE A WONDERFUL DAY

KUMAR

On September 17, 2018, one of Sachdeva's attorneys, Whitbeck, responded to Sangaran's email, addressing his reply to opposing counsel: "Can we agree that this case is removed from

- 3 -

arbitration by agreement?  I don't see how we can coordinate that with your client nor do I think he wants to pay for it.  We could just put this in the order."[2]

Approximately six hours after Whitbeck sent his response, Sangaran replied:  "HI Jay.  I DO NOT agree to remove this case from Arbitration.  I already paid for it and it will stay as is at this time."

Whitbeck sent a subsequent email to both parties' counsel (removing Sangaran from the recipients), stating "That takes care of that.  I will sign your order to withdraw and deal with this later."

In December 2018, Sachdeva filed a "Motion to Stay Arbitration Proceedings and to Discharge Obligations Set Forth in the Agreement to Arbitrate," arguing that Sangaran had anticipatorily repudiated the Agreement to Arbitrate via his September 13, 2018 email, and Sachdeva had accepted his repudiation via the September 17, 2018 response from her counsel, Whitbeck.  She also argued that her duty to perform according to the Agreement to Arbitrate should be discharged because Sangaran's "mental instability" and the withdrawal of his previous counsel had rendered performance impossible.  The circuit court heard arguments on June 29, 2019, and subsequently granted Sachdeva's motion, finding that Sangaran's email was a clear and unequivocal repudiation.  It rejected Sachdeva's argument that performance had been rendered impossible.  Sangaran timely appealed.

## II.  ANALYSIS

This case turns on the interpretation of the words used by the parties in their email exchange.  Although "we are mindful of the great weight accorded a trial court's factual findings

_____

[2] Sangaran's counsel forwarded this email to him, asking:  "Let's have a quick conversation about this.  I need OC [opposing counsel] to sign my order to withdraw and *he has a question* about removing the case from arbitration."  (Emphasis added.)

- 4 -

after an *ore tenus* hearing[, t]hat rule is not applicable . . . where, as here, all probative evidence on the issue of retraction is limited to the interpretation of a letter." <u>Vahabzadeh v. Mooney</u>, 241 Va. 47, 51 (1991).

"[I]t is firmly established that for a repudiation of a contract to constitute a breach, the repudiation must be clear, absolute, unequivocal, and must cover the entire performance of the contract." <u>Bennett v. Sage Payment Sols., Inc.</u>, 282 Va. 49, 59 (2011) (quoting <u>Vahabzadeh</u>, 241 Va. at 50). When one party has anticipatorily repudiated a contract, the other has the right "(1) [t]o rescind the contract altogether, (2) to elect to treat the repudiation as a breach, either by bringing suit promptly, or by making some change of position; or (3) to await the time for performance of the contract and bring suit after that time has arrived." <u>Simpson v. Scott</u>, 189 Va. 392, 398 (1949) (quoting Williston on Contracts, vol. 5 §§ 1296-1337).

A party who has anticipatorily repudiated an agreement may retract it prior to the non-breaching party accepting such repudiation (either by rescinding the contract or treating the repudiation as a breach by bringing suit, or by acting in reliance on it). "[L]ogic and reason compel the application of the same standard to the retraction of a repudiation that is applied in determining whether a contract has been repudiated." <u>Vahabzadeh</u>, 241 Va. at 51. Therefore, the revocation must be "clear, definite, absolute, and unequivocal in evincing the repudiator's intention." <u>Id.</u>

Here, Sachdeva argues that: (1) Sangaran's September 13th email constituted an anticipatory repudiation, (2) Whitbeck's email evinced Sachdeva's acceptance of that repudiation, and (3) Sangaran's response to Whitbeck was not a clear and unequivocal revocation of his anticipatory repudiation.

Assuming without deciding that Sangaran's September 13th email constituted an anticipatory repudiation,[3] Sachdeva's counsel's response did not constitute an acceptance of that repudiation. He asked "Can we agree that this case is removed from arbitration by agreement?" That is not an acceptance; it is a question seeking clarification.

The circuit court, in construing this email to be an acceptance, substantially rephrased and reinterpreted this email when ruling that it constituted an acceptance of the repudiation. It said, "Mr. Whitbeck writes back and says, 'It looks like your client doesn't want to arbitrate. Can we put that in the order?' Right. So, when he says put that in the order, that means, 'I'm accepting your client's offer not to arbitrate.'" That is not what the email actually says, however, and this rephrasing and the circuit court's resulting interpretation are incorrect. Although this Court accords great deference to a trial court's interpretation of the facts, Purce v. Patterson, 275 Va. 190, 194 (2008), the justification for that deference is not applicable here, Vahabzadeh, 241 Va. at 51. This Court is reviewing the same language as the circuit court—this is not a matter of credibility, where the circuit court read the author's tone or demeanor in court in interpreting the email. We, like the circuit court, are interpreting a written statement, a task this Court is in just as good a position to perform, particularly when able to contrast that written statement with the circuit court's interpretation.

After Sangaran emailed stating that he did not agree to remove this case from arbitration, Sachdeva's counsel responded by writing "That takes care of that. I will sign your order to withdraw and deal with this later." That response further confirms that Whitbeck was seeking

---

[3] Sangaran argues that his email did not anticipatorily repudiate the Agreement to Arbitrate. Specifically, Sangaran's email makes no mention of arbitration, and it doesn't address attorneys' fees, which were supposed to be dealt with in arbitration according to the Agreement. Furthermore, it couldn't be *unequivocally* clear that this was a repudiation if the email prompted Whitbeck to respond seeking clarification of Sangaran's intent.

clarification as to Sangaran's intentions, which he received and understood by writing "that takes care of that." Therefore, Whitbeck's response to Sangaran's September 13th email was not an acceptance of the anticipatory repudiation.

Without any clear acceptance of, or action in reliance on,[4] Sangaran's anticipatory repudiation of the Agreement, Sangaran effectively revoked any anticipatory repudiation with his emailed response saying "I DO NOT agree to remove this case from Arbitration." Sachdeva makes the tenuous argument that this was not a clear and unequivocal revocation. Yet we fail to see how Sangaran could have been any clearer in expressing his intention to proceed according to the Agreement to Arbitrate. In response to Whitbeck's email seeking clarification, Sangaran promptly explained that he wished to move forward with arbitration according to the Agreement. Accordingly, because Sachdeva did not accept or act on any anticipatory repudiation prior to Sangaran clearly, absolutely, and unequivocally revoking such repudiation, the circuit court erred in ordering arbitration stayed and in discharging Sachdeva's obligations set forth in the Agreement to Arbitrate.

## III. CONCLUSION

Assuming without deciding that Sangaran anticipatorily repudiated the Agreement to Arbitrate, Sachdeva never accepted that repudiation prior to Sangaran clearly revoking any

---

[4] Although Virginia's case law is not well-developed on this subject, it is commonly understood in many jurisdictions that a party must take some action in reliance upon another's anticipatory repudiation for such an agreement to be binding prior to a party's revocation of the repudiation. See Restatement (Second) of Contracts § 256(1) (Am. Law Inst. 1981) (A repudiation "is nullified by a retraction of the statement if notification of the retraction comes to the attention of the injured party *before he materially changes his position in reliance on the repudiation* or indicates to the other party that he considers the repudiation to be final." (emphasis added)); see also Simpson, 189 Va. at 398 (noting that a party may "treat the repudiation as a breach . . . by making some change of position"). Sachdeva does not allege, and the evidence does not suggest, that she took any action to materially change her position prior to Sangaran communicating his intent to keep the case scheduled for arbitration.

repudiation.  Therefore, the circuit court erred in granting Sachdeva's motion.  The matter is

reversed and remanded to the circuit court for proceedings consistent with this opinion.

<u>Reversed.</u>